Thomas FAZIO, Plaintiff-Appellant,

v.

LYKES BROS. STEAMSHIP CO., INC., Defendant-Appellee.

No. 77–1515
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.*, 5 Cir., 1970, 431 F.2d 409.

Bruce C. Waltzer, New Orleans, La., for plaintiff-appellant.

William E. Wright, New Orleans, La., for defendant-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

PER CURIAM:

■ We affirm the judgment of the United States District Court for the East-ern District of Louisiana, which was based on the findings of fact and conclusions of law contained in the district court's Memorandum of Opinion. The district court's opinion is reproduced here as an appendix.

AFFIRMED.

## APPENDIX

### MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

This matter is before the Court on the cross-motions of both the plaintiff and defendant for summary judgment. At issue is plaintiff's seaman's status for his purported Jones Act claim. Oral argument was heard on January 19, 1977, after which the Court took the matter under submission.

■ For the purposes of this motion, the following facts are undisputed. On or about September 10, 1975, plaintiff was employed by defendant Lykes Bros. as a member of its shoregang. As a member of the shoregang, his duties included, from time to time, the repair of lifeboats, the rigging and changing of booms and the handling of lines. The shoregang occasionally assisted in shifting vessels from berth to berth within the port if a full crew was not aboard. However, plaintiff has never gone to sea or taken a voyage from port to port in any vessel. Plaintiff, who lives at home, is occasionally required to take his meals aboard a vessel. Plaintiff's actual work was supervised by his shoregang foreman. The shoregang does work on wharves, aprons and warehouses as well as ships. The members of the shoregang, including the plaintiff, are not assigned to any particular vessel. In fact, the shoregang may work on several ships in a particular day, or, if the work requires it, may not work on any ship on a particular day. (Affidavit of George F. Price). However, since the plaintiff is employed by Lykes Bros., he works only on their vessels when required. Furthermore, as a result of a collective bargaining agreement between the plaintiff's union and employer, plaintiff was required to have sea-

man's papers as a member of the shoregang. These papers in no way related to the actual work performed by the union members; in fact, plaintiff signed no articles or stripbound agreement. Plaintiff was injured while his shoregang was aboard the S. S. THOMPSON LYKES to replace a 35-ton cargo boom.

At issue here is whether the plaintiff was a member of the crew of a vessel. In particular, did he have a more or less permanent connection with a vessel and was he aboard primarily to aid in navigation?

Although this case presents a somewhat close question in that plaintiff did perform some seaman's duties, either in place of the regular crew or alongside them, the Court finds that his work was of such a transitory nature as to deny him seaman status under the law.

The status of Lykes Bros.' shoregang members was decided by this very Court in the case of *Malkowitz v. Lykes Bros. S. S. Co.* (C.A. 70–3393, "I" E.D.La.1972) aff'd per cur. 5th Cir. 1973. Here, the plaintiff was a member of this same Lykes' shoregang who worked on a variety of vessels. The Court, in holding Malkowitz was not a seaman, noted:

> This Court is of the opinion that there is no evidentiary basis for submitting the issue of seaman status to the jury, although Mr. Malkowitz had been employed by Lykes as a seaman in prior years. At the time of the accident, he was clearly and only a member of the shoregang. He lived on the shore and did no eating on the vessel. There was no permanent connection of any type to any vessel or group of vessels.

The case at bar is not factually distinguishable from *Malkowitz*. Here, the plaintiff is also a member of the shoregang. Though he takes some of his meals aboard ship, he lives at home and returns there at the end of the day. While he does perform some seaman's duties aboard vessels, there is no permanency to those duties. As noted in the uncontroverted affidavit of George F. Price, manager of Lykes Bros.' Marine Division, and who oversees the shoregang

operations, the shoregang does not do *all* of its work aboard ship. As their name suggests, members of the shoregang, on a particular day, may not do *any* work on a vessel, their duties being confined solely to the shore.

The entire mode of operation of the shoregang crew establishes that their work aboard vessels, though at times substantial, was entirely transitory and depended on the particular need of Lykes Bros. for assistance aboard ship on any given day. Accordingly, the Court finds, as a matter of law that plaintiff had no permanent connection of any type to any vessel or group of vessels and, therefore cannot be afforded seaman status.

■ Although not necessary to the finding the Court has just made, the Court would like to address itself to an issue raised by the parties. Plaintiff argues that since he was assigned to the Lykes fleet, he was assigned to a particular *group* of vessels and had sufficient connexity with that group of vessels to be a seaman. As noted above, the Court has denied seaman status on the ground that plaintiff's connection with a vessel or group of vessels was not permanent. That is, even assuming that the Lykes "fleet" was a proper group of vessels, plaintiff's work aboard them was transitory and not permanent.

However, the issue of whether the fleet is a proper group of vessels is interesting and the analysis of the Fifth Circuit in the case of *Rotolo v. The Halliburton Co.,* 317 F.2d 9 (5th Cir. 1963) is particularly appropriate here. In *Rotolo,* the plaintiff performed welding repair work on his employer's vessels and from time to time he was assigned to do a single repair job on one designated vessel. In affirming a summary judgment denying seaman status, the Fifth Circuit held:

> Here, Rotolo, from time to time, was assigned to do and did a single repair job on a single designated boat. At no given time was he assigned to repair two or more boats. Rather, each of his repair job assignments was always directed to a

single repair job on a single boat. While he was assigned to repair different boats, he was not at any time charged with the duty of keeping two or more specified boats in repair. Nor was he ever charged with the duty of keeping a single boat in repair.

Rotolo's connection with a Halliburton boat or boats, by reason of being assigned to do and doing, from time to time, a single repair job on a single designated boat, had no element of permanency. In each instance, his assignment to repair and his repair job on a particular boat was wholly transitory in character. In short, at no time was Rotolo permanently assigned to or connected with a specified boat, or two or more specified boats. And Rotolo did not do a substantial part of his work on a specified boat, or two or more specified boats. And the relation of the repairs which he performed on a boat, if any, to the functioning of the boat, or the accomplishment of its mission, was extremely tenuous. It was substantially different from day-to-day maintenance of a particular boat or boats.

The instant case is clearly distinguishable from a case where the injured person regularly performed a substantial part of his work on every one of several specified vessels, like, for example, a company pilot regularly employed and who customarily and regularly boarded every one of several vessels to dock and undock it.

It is likewise distinguishable from the *Braniff* case, *supra*, where the injured person, a master mechanic, was assigned to keep in repair a specific group of ferries, and each morning boarded each of the ferries, to ascertain whether any maintenance or repair work needed to be done on it, and then proceeded with his helper and a gang of workmen to do such maintenance or repair work as was needed, either while the ferries were under way or withdrawn from service.

We conclude that there was no reasonable evidentiary basis to support a jury finding that Rotolo, at the time of his injury, was a seaman and member of a crew of a vessel under the Jones Act.

Affirmed.

Similarly, the work performed by the plaintiff was just as transitory. Plaintiff, under the supervision of his shoregang foreman is directed to perform work on many different vessels composing the Lykes fleet that may be in port at any one time. Plaintiff's contention that he is assigned to a particular group of vessels, namely the Lykes fleet, is without merit. This would be tantamount to a longshoreman stating that he is assigned to load and unload all the ships that enter the port of New Orleans and, therefore, he, too, is assigned to a particular group of vessels. In *Rotolo,* the plaintiff was certainly assigned to the Halliburton fleet. However, for an individual to be accorded seaman status, his relationship with a vessel or vessels must be more than transitory and the larger the fleet, the more tenuous the relationship.

Accordingly, IT IS ORDERED that plaintiff's motion for summary judgment be and is hereby DENIED, and defendant's motion for summary judgment be and hereby is GRANTED.