Deborah M. BERTRAND, Etc., et al.,
Plaintiffs-Appellants,

v.

INTERNATIONAL MOORING &
MARINE, INC., et al.,
Defendants-Appellees,

v.

FIDELITY & CASUALTY COMPANY,
Defendant-Appellant.

No. 81–3450.

United States Court of Appeals,
Fifth Circuit.

March 17, 1983.

Rehearing and Rehearing En Banc
Denied June 27, 1983.

---

Hunt, Godwin, Painter & Robby, David Painter, Lake Charles, La., David W. Robertson, Alexandria, La., for Deborah M. Bertrand.

Conery & Breaux, John E. Conery, Franklin, La., for Shmuel Mezan.

Paul H. Due, Baton Rouge, La., for amicus curiae La. Trial Lawyers.

Landry, Watkins & Bronin, Alfred Smith Landry, Iberia, La., for Fidelity & Cas.

Voorhies & Labbe, W. Gerald Gaudet, Lafayette, La., for Am. Gen., Inso., Co.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert M. Contois, Jr., New Orleans, La., for Arkwright-Boston Manuf. Mut. Ins. Co.

Allen, Gooch & Bouregois, Raymond Morgan Allen, Randall Theunissen, Lafayette, La., for Intern. Mooring & Marine, Inc.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

INGRAHAM, Circuit Judge.

The issue of which marine workers qualify as Jones Act seamen again surfaces before this court. Plaintiffs, who were members of an anchorhandling crew for International Mooring and Marine, Inc. (IMM), sued under the Jones Act to recover for injuries suffered in a one-vehicle accident while returning from a one-week relocation job. Both sides moved for summary judgment on the issue of seaman status. The district court denied plaintiffs' motion and granted defendants' motion. *Bertrand v. International Mooring and Marine, Inc.*, 517 F.Supp. 342, 348 (W.D.La.1981). Plaintiffs have appealed the judgment and contend that summary judgment was erroneous because the evidence supported summary judgment for plaintiffs or created a fact issue for jury determination. Concluding that the district court relied on a mistaken formulation of the legal principles governing the status determination, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

On April 7, 1979, IMM dispatched an anchoring and mooring crew, which included Robert Clark as supervisor, Emile Bertrand, III, as winch operator, and Shmuel Mezan and William Emery as riggers.[1] For this particular mission, the anchorhandling crew worked on the Aquamarine 503 and relocated Tenneco's drilling rig, the Marlin 7, from a point near Intercoastal City, Louisiana, to a point off the coast of Galveston, Texas. The Aquamarine 503[2] was chartered by Tenneco for IMM's use and was specially outfitted for lifting the heavy anchors from the ocean floor. It had sufficient deck space to stow the anchors until the rig reached its new location and the anchors reset. The IMM crew ate and slept aboard the vessel for the duration of the mission, which lasted seven days.[3] In addition to

---

1. Three other members of the IMM anchorhandling crew were not before the district court.

2. The vessel was accompanied by a complement crew of a master, cook, mechanic, and deckhands.

3. The work summaries indicate that the missions performed by the IMM crews, which included securing anchors loosened by bad weather and relocating drilling rigs, lasted from several hours to nineteen days, with the average job lasting four to five days.

performing their anchorhandling duties, the IMM crew assisted in readying the vessel for its mission. Upon completing the Marlin 7 relocation, the IMM crew was met in Galveston by Paul Bertrand, who had been dispatched in the company van to pick up the crew. Paul Bertrand had been a stand-by rigger for this mission and thus had remained on call at the IMM headquarters in New Iberia, Louisiana. On the return trip the van was involved in a one-vehicle accident that killed Emile Bertrand, III, Paul Bertrand, and William Emery and injured Shmuel Mezan.

The Jones Act suits [4] of Mezan and decedents' representatives were consolidated in the district court. Plaintiffs and defendants moved for summary judgment on the issue of seaman status. For purposes of the summary judgment motions, neither defendants nor the district court distinguished the status of Paul Bertrand from the other crew members.[5] The district court denied plaintiffs' motion, granted defendants' motion, and stated that while "this anchorhandling crew was continuously subjected to the perils of the sea like blue water seamen and was engaged in classical seaman's work, the Court finds as a matter of law that there is no reasonable evidentiary basis to support a jury finding that the injured party and the decedents involved herein were permanently assigned to any specific vessel or group of vessels and therefore, they were not seamen under the Jones Act." *Id.* at 348. Plaintiffs now appeal the judgment and assert that the decision was erroneous because summary judgment was appropriate for plaintiffs or that the issue should have gone to the jury.[6]

Our analysis of the issue of seaman's status necessarily begins by articulating the standards that resolve which marine workers are "seamen" or "members of a crew," [7] since coverage under the Jones Act and the Longshoremen's and Harbor Workers' Compensation Act are mutually exclusive. *E.g., McDermott, Inc. v. Boudreaux,* 679 F.2d 452, 459 n. 7 (5th Cir.1982); *Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277, 280 (5th Cir.1981). In *Ardoin,* we noted that

---

4. The Jones Act, 46 U.S.C. § 688, states:

   Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

5. "[O]nce it is established that the claimant is a seaman, the Jones Act permits recovery even if he sues for injuries received while off ship and engaged in temporary work for his employer unrelated to service of the ship." *Higginbotham v. Mobil Oil Corp.,* 545 F.2d 422, 432 (5th Cir.1977), *reversed on other grounds,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

6. Since the denial of plaintiffs' motion for summary judgment is an interlocutory order and is unappealable, *Fluor Ocean Services, Inc. v. Hampton,* 502 F.2d 1169 (5th Cir.1974), the only issue for our review is whether the district court erred in granting summary judgment for defendants. *See Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277, 278–79 (5th Cir.1981).

7. The term "seaman" is contained in the original Jones Act enacted in 1920. In 1927 Congress enacted the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C. § 901 *et seq.,* which extended to all maritime workers except masters or "members of a crew of [a] vessel." The Supreme Court held that the effect of the Act was to restrict the benefits of the Jones Act to "members of a crew of [a] vessel." *Swanson v. Marra Bros., Inc.,* 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). The terms "seaman" and "member of a crew" are now used interchangeably.

*See Abshire v. Seacoast Products, Inc.,* 668 F.2d 832, 834 n. 1 (5th Cir.1982); *Longmire v. Sea Drilling Corp.* 610 F.2d 1342, 1345 (5th Cir.1980).

the *McKie* test [8] "still articulates the basic compass of the term 'seaman' as used in the Jones Act." *Id.* We further noted that "the entry of summary judgment for the defendant in a Jones Act case on the ground that the plaintiff lacked seaman's status was improper and that there was an evidentiary basis to submit that question to the jury '(1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.'" *Id.* at 280–81 (citing *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959) (the *Robison* test)). As we recently stated, however, "our subsequent decisions make it clear that the *Robison* test, with its broad concept of seaman's status, is to be used not only in deciding whether a case goes to the jury in a Jones Act dispute, but also in delimiting the power of the factfinder to deny or confer such status." *McDermott,* 679 F.2d at 457. Consequently, we analyze this case under the test laid down in *Robison.*[9]

■ Turning to the appropriateness of summary judgment on the issue of seaman status, we note that it has been described as a mixed question of law and fact, *Holland v. Allied Structural Steel Co.,* 539 F.2d 476, 483 (5th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977); *Keener v. Transworld Drilling Co.,* 468 F.2d 729, 730 (5th Cir.1972), and as "one whose resolution requires 'the application of legal principles to specific underlying facts,'" *Ardoin,* 641 F.2d at 280 (quoting *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1345 (5th Cir.1980)), and thus is normally a question for the jury. *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350, 352 (5th Cir.1982); *Watkins v. Pentzien,* 660 F.2d 604, 606 (5th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1982); *Robison,* 266 F.2d at 779–80. While "the issue is to be left to the jury even when a claim to seaman status is to be a relatively marginal one," *Barrios v. Louisiana Construction Materials Co.,* 465 F.2d 1157, 1162 (5th Cir.1972), summary judgment or a directed verdict by the court is proper in cases where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts. *Abshire v. Seacoast Products, Inc.,* 668 F.2d 832, 835 (5th Cir.1982); *Ardoin,* 641 F.2d at 280; *Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 454 (5th Cir.1980); *Landry v. Amoco Production Co.,* 595 F.2d 1070, 1072 (5th Cir. 1979); *Robison,* 266 F.2d at 779–80. Since the underlying facts are undisputed in the present case, we review them to determine whether reasonable persons might draw conflicting inferences.

■ In resolving the claim to seaman status, the district court concluded that "one cannot be a member of a crew of numerous vessels which have no common ownership or control." *Bertrand,* 517 F.Supp. at 347. Although one can be a member of a crew of numerous vessels which have common ownership or control, *e.g., Braniff v. Jackson Avenue-Gretna Ferry, Inc.,* 280 F.2d 523 (5th Cir.1960), the

---

**8.** "The essential and decisive elements of the definition of a 'member of a crew' are that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation." *McKie v. Diamond Marine Co.,* 204 F.2d 132, 136 (5th Cir.1953).

**9.** We never abandoned the *McKie* test, but continue to quote it or a modified version, which encompasses the second part of the *Robison* test, primarily to address cases in which the issue is whether the vessel is in navigation.

*See, e.g., Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350, 352 (5th Cir.1982) (modified version); *Watkins v. Pentzien, Inc.,* 660 F.2d 604, 606 (5th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1982) (modified version); *Garcia v. Queen, Ltd.,* 487 F.2d 625, 628 n. 6 (5th Cir.1973); *Williams v. Avondale Shipyards, Inc.,* 452 F.2d 955, 958 (5th Cir.1971); *Bodden v. Coordinated Caribbean Transport, Inc.,* 369 F.2d 273, 274 (5th Cir.1966).

obverse statement, i.e., the district court's conclusion of law, is neither dictated nor supported by case law. We have never held that a seaman is barred from coverage under the Jones Act if the employer neither owns nor controls the several vessels upon which the seaman works. Instead, we have specifically held that in the context of the single vessel, the employer need not be the owner or operator of the vessel for Jones Act liability to attach. *E.g., Roberts v. Williams-McWilliams Co.,* 648 F.2d 255, 262 (5th Cir.1981); *Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d at 454; *Barrios v. Louisiana Construction Materials Co.,* 465 F.2d at 1164–65. To require common ownership or control when seamen work on several vessels but not when they work on a single vessel is inconsistent with the liberal construction of the Jones Act that has characterized it from the beginning and is inconsistent with its purposes. *Accord Robison,* 266 F.2d at 780.

▮ In *Braniff,* we first examined whether to distinguish between seamen that work on a single vessel and those that work on several vessels. We stated that while "[t]he usual thing [was] for a person to have a Jones Act seaman status in relation to a particular vessel, ... there is nothing about this expanding concept to limit it mechanically to a single ship." *Braniff,* 280 F.2d at 528. Since *Braniff,* the group of vessels concept has been used to expand coverage under the Jones Act, not restrict it.[10] "Although this anchor-handling crew was continuously subjected to the perils of the sea like blue water seamen and was engaged in classical seaman's work," *Bertrand,* 517 F.Supp. at 348, appel-

lees contend that Jones Act coverage should be withheld because the vessels were not under the employer's common ownership or control. We note, however, that whether the different vessels were under common ownership or control was determined by the employer, not the nature of the claimants' work. In the present case, IMM chose to borrow the Aquamarine 503 from Tenneco, the customer whose drilling rig was being relocated. The vessel was then specifically outfitted for the mission and the customer was billed only for the services of the anchorhandling crew. On occasion, however, IMM chartered vessels directly for their own use and billed the customer for the chartered vessel as well as for the services of the anchorhandling crew.. *Id.* at 344 (undisputed fact IX). Thus, if the anchorhandlers satisfied the *Robison* test, Jones Act coverage would not be precluded by the mere fact that IMM had chartered the vessels used by the anchorhandlers. *See Taylor v. Packer Diving & Salvage Co.,* 342 F.Supp. 365 (E.D.La.1971), *aff'd,* 457 F.2d 512 (5th Cir.1972). Moreover, had IMM chosen to own rather than charter the vessels, the Jones Act clearly would cover workers.meeting the *Robison* criteria. *Braniff,* 280 F.2d at 528. In light of the purposes of the Jones Act, we will not allow employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned. *See Williams v. Milwhite Sales Co.,* 197 F.Supp. 730 (E.D. La.1961), *cited with approval in Barrios v. Louisiana Construction & Materials Co.,* 465 F.2d 1157 (5th Cir.1972).

---

**10.** In *Braniff,* the claimant was responsible for maintaining not just one, but every ferry owned by his employer. We have allowed recovery under the Jones Act when the claimants were not responsible for each and every vessel, but worked on several vessels owned by their employers. *See Abshire v. Seacoast Products, Inc.,* 668 F.2d 832 (5th Cir.1982); *Higginbotham v. Mobil Oil Corp.,* 545 F.2d 422 (5th Cir.1977), *reversed on other grounds,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); *Magnolia Towing Co. v. Pace,* 378 F.2d 12 (5th Cir.1967). Further, the fact that the employers chartered, rather than owned the vessels upon

which the employees worked has not affected claimants' seamen status. *See Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277 (5th Cir.1981); *Bazile v. Bisso Marine Co.,* 606 F.2d 101 (5th Cir.1979). Finally, recovery has been allowed when employees work aboard vessels that are neither owned nor operated by their employers. *See Taylor v. Packer Diving & Salvage Co.,* 342 F.Supp. 365 (E.D.La.1971), *aff'd,* 457 F.2d 512 (5th Cir.1972); *Williams v. Milwhite Sales Co.,* 197 F.Supp. 730 (E.D.La.1961), *approved in Barrios v. Louisiana Construction & Materials Co.,* 465 F.2d 1157, 1165–66 (5th Cir.1972).

While the fact that a claimant's work places him on several different vessels does not preclude seaman status, it is relevant in making that determination. As we stated in *Longmire,* "[t]he issue of an injured worker's status as a seaman should be addressed with reference to the nature and location of his occupation taken as a whole." *Longmire,* 610 F.2d at 1347. Consequently, the character and extent of a worker's service aboard vessels, whether it be one or several, affects the resolution of seaman status. We have repeatedly emphasized that "the relationship creating seaman status must be substantial in point of time and work, not merely sporadic." *Dove v. Belcher Oil Co.,* 686 F.2d 329, 333 (5th Cir.1982). *See, e.g., Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d at 353; *Roberts,* 648 F.2d at 261; *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981); *Rotolo v. Halliburton Co.,* 317 F.2d 9, 13 (5th Cir.), *cert. denied,* 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79 (1963); *Braniff,* 280 F.2d at 528. As the number of vessels increases or the period of service decreases, the claimant's relationship with the vessels tends to become more tenuous and transitory. *See Aparicio v. Swan Lake,* 643 F.2d 1109 (5th Cir.1981); *Fazio v. Lykes Bros. Steamship Co.,* 567 F.2d 301 (5th Cir. 1981). Individually, these factors are not determinative, *e.g., Brown v. ITT Rayonier, Inc.,* 497 F.2d 234, 237–38 (5th Cir.1974) (temporary relationship insufficient to deny status); *Braniff,* 280 F.2d at 528 (status allowed although assigned to several vessels); however, to the extent that they reveal the nature and location of a claimant's work, they should be considered when applying the *Robison* criteria. Accordingly, we turn to the facts to decide whether reasonable persons could find that plaintiffs qualified as seamen under the *Robison* test.

The two criteria of *Robison* are conjunctive. *E.g., Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 328 (5th Cir.1977). Plaintiffs satisfy the second part because the performance of the anchorhandlers' duties clearly contributed to the accomplishment of the vessel's mission, the relocation of the drilling barge. Thus, we turn to the first criterion, which concerns the issue of the injured workers' connection with a vessel, and note that "it offers alternative grounds for meeting the standard." *Id.* at 326. Although this aspect of the test addresses the threshold inquiry of whether the claimant has had sufficient contact with waterborne or vessel-related activities, *Landry,* 595 F.2d at 1072, we have sometimes emphasized the permanency aspect to the apparent exclusion of the substantial work prong of the standard. *See, e.g., Guidry v. Continental Oil Co.,* 640 F.2d at 529 & n. 19.[11] Nevertheless, the worker may satisfy the requisite vessel relationship by demonstrating the performance of a substantial part of his work aboard a vessel, *e.g., Landry,* 595 F.2d 1070, or a permanent assignment to a vessel. *E.g., Ardoin,* 641 F.2d 277.

For a claimant to satisfy the substantial work prong of *Robison,* "it must be shown that he performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity." *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d at 353; *Holland,* 539 F.2d at 484; *Keener,* 486 F.2d at 732. The undisputed facts reveal that the anchorhandling crew worked on twenty-five vessels and that approximately ninety per cent of the work was performed aboard the vessels. *Bertrand,* 517 F.Supp. at 344 (undisputed fact XI). *Compare Abshire,* 668 F.2d at 835 (90–95% work on 21 vessels—seaman) *and Landry,* 595 F.2d at 1073 (70%

---

11. Although the analysis in some cases focuses upon the claimant's failure to meet a particular prong, usually the permanency prong, the facts of the cases reveal that neither alternative was satisfied. For example, the plaintiff in *Guidry,* a casing pusher on a drilling barge, admitted in deposition that he had no permanent assignment to any particular drilling vessel or group of vessels. While we focused on the lack of a permanent attachment, the nature of his work placed him on vessels for only half of his assignments and required him to work only about twenty per cent of his time on those vessels. Consequently, this minimal vessel-related work evidences the failure of the substantial work alternative.

work vessel-related—seaman) *with Guidry v. Continental Oil Co.,* 640 F.2d at 529 (half of assignments on 20 vessels with work constituting 20–25% of time on vessels—not seaman) *and Keener,* 468 F.2d at 731 (20–25% of work on one vessel—not seaman). Although percentages evidencing vessel-related work is important in determining seaman status, it is not conclusive. As we noted in *Keener,* "[j]ust as there can be no precise delineation of that quantum of duties which, when performed on board a vessel, will make the employee a seaman, similarly there is no brightline test to be applied in determining the degree of frequency and regularity of performance which must be shown in order to claim the status." *Keener,* 468 F.2d at 731–32. Consequently, we must consider all the circumstances of claimants' employment to determine the relation of the vessel-related activities to the claimants' total responsibilities.[12] *Longmire,* 610 F.2d at 1347 n. 6. In the present case, the anchorhandling crew was regularly and continuously assigned to vessel-related activity.[13] *Bertrand,* 517 F.Supp. at 345 (undisputed fact XII). The remaining time not spent on the vessels, ten per cent, was spent "preparing equipment for [the] offshore vessel assignments." *Id.* at 344 (undisputed fact XI). Thus, plaintiffs' entire employment involved preparing to work or working from a vessel. *Compare with Guidry v. Continental Oil Co.,* 640 F.2d at 539 (half of casing pusher's assignments were upon nonvessels) *and Fazio,* 567 F.2d at 303 (some days shoregang performed no vessel-related work) *and Dugas v. Pelican Construction Co.,* 481 F.2d 773, 777 (5th Cir.), *cert. denied,* 414 U.S. 1093, 94

S.Ct. 724, 38 L.Ed.2d 550 (1973) (roustabout's duties included cutting grass, repairing a bridge, and land-based office work). We conclude that in light of the group of vessels concept discussed above, reasonable persons could find that plaintiffs were seamen because they performed a substantial portion of their work on vessels.

■■■■■ Moreover, reasonable persons could have concluded that plaintiffs satisfied the permanent assignment prong of *Robison's* first criterion. As we stated in *Ardoin,* "[t]he 'permanency' requirement is, we think best understood as indicating that in order to be deemed a 'seaman' within the meaning of the Jones Act 'a claimant [must] have more than a transitory connection' with a vessel or a specific group of vessels." *Ardoin,* 641 F.2d at 281 (quoting *Davis,* 549 F.2d at 326). *See Mungia v. Chevron Co.,* 675 F.2d 630, 632 (5th Cir. 1982). This prong is "meant to deny seaman's status to those who come aboard a vessel for an isolated piece of work, not to deprive a person whose duties are truly navigational of Jones Act rights merely because he serves aboard a vessel for a relatively short period of time." [14] *Porche v. Gulf Mississippi Marine Corp.,* 390 F.Supp. 624, 631 (E.D.La.1975). Accordingly, we review the facts in light of factors evincing a vessel relationship that is substantial in point and time and not merely spasmodic. *See Dove,* 686 F.2d at 333; *Guidry v. Continental Oil Co.,* 640 F.2d at 529; *Braniff,* 280 F.2d at 528. With respect to their service upon the vessel, we initially note that the crew actually went to sea and ate and slept aboard the vessels.[15] *Compare Davis,* 549

---

**12.** We have often discussed this aspect in terms of whether the vessel-related work was performed with any degree of regularity or continuity. *E.g., Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350, 353 (5th Cir.1982).

**13.** As in *Abshire,* the claimant's employer kept careful records showing to which vessel he was attached while he was performing his duties. *See Abshire v. Seacoast Products, Inc.,* 668 F.2d 832, 836 (5th Cir.1982).

**14.** "In short, we think that something other than the mere fact of a temporary relationship

is involved in most cases which profess to deny seaman's status because of an absence of a permanent connection with the vessel." *Brown v. ITT Rayonier, Inc.,* 497 F.2d 234, 238 (5th Cir.1974).

**15.** We reiterate that no particular factor is determinative of seaman status, *e.g., Keener v. Transworld Drilling Co.,* 468 F.2d 729, 731 (5th Cir.1972) ("Stevedores and offshore roughnecks who do no more than sleep and eat aboard a tender fall into the [transitory, rather than permanently attached] category."); *Stokes v. B.T. Oilfield Services, Inc.,* 617 F.2d

F.2d 314 *with Stokes v. B.T. Oilfield Services, Inc.,* 617 F.2d 1205, 1207 (5th Cir.1980) *and Fazio,* 567 F.2d at 303. We further note that plaintiffs' tour of duty with a vessel was for the duration of the vessel's mission. Like the situation in *Roberts,* the mission of the vessel and the plaintiff's job were coextensive; when plaintiffs finished their responsibilities, the vessel's mission was completed. *See Roberts,* 648 F.2d at 262; *Ardoin,* 641 F.2d at 281–82. This should be contrasted with the situation in which the marine worker performs a particular specialized job that contributes toward the vessel's larger mission.[16] *E.g., Guidry v. Continental Oil Co.,* 640 F.2d 523 (oil worker pushing casing for well); *Dugas,* 481 F.2d 773 (roustabout unloaded a specific number of pipe joints from a barge); *Rotolo,* 317 F.2d 9 (welder performed a single repair on a single boat). Consequently, plaintiffs' claim to seaman status is strengthened by the presence of these factors, the lack of which has proven to be "fatal stumbling blocks [to] land-based workers providing shore services to docked vessels." *Davis,* 549 F.2d at 327.

Further support for plaintiffs' claim to seaman status appears in the nature of their work. First, like the welder's work in *Ardoin,* "the nature of [claimant's] work was such that he never worked except in conjunction with one of these [vessels]." *Ardoin,* 641 F.2d at 282. *Compare Abshire,* 668 F.2d at 836 (claimant "spent his entire working time aboard ships, except for those rare occasions where he was rigging or making preparation for work to be performed aboard vessels") *with Fazio,* 567 F.2d at 303 (on some days, shore crew's duties were confined solely to shore). Second, the anchorhandlers' work from the vessels was their primary duty, and not merely incidental to work on shore or a nonvessel. *Compare with Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d

at 353 (work aboard vessel was no more than transitory or incidental to employment aboard the platform) *and Longmire,* 610 F.2d at 1346 ("because of the symbiotic relationship between the tender and the drilling platform, [claimant's] performance of [his primary duty concerning drilling operations on the platform] necessarily carried him on to the tender from time to time"). Third, the IMM crew aided in readying the vessel for its mission. *Compare Davis,* 549 F.2d at 328 (claimant assisted in welding cracks on vessel, worked with the crew in washing the deck, and helped load and unload the barge alongside the crew) *with Guidry v. Continental Oil Co.,* 640 F.2d at 526 n. 8 (other than his specific job duties, claimant engaged in no activities which contributed to the rig's mission). Each of these factors provide further evidence that a reasonable person could conclude that plaintiffs were seamen by virtue of a permanent attachment to the vessels.

In conclusion, the district court's view of the group of vessels concept was too restrictive. If plaintiffs demonstrate the presence of the *Robison* criteria, employers cannot prevent seamen from recovering under the Jones Act by assigning them to different vessels or by making arrangements with third parties concerning the operation or navigation of the vessels upon which they serve. Since our review of the undisputed facts in light of *Robison* and the group of vessels concept discussed above reveals that reasonable persons could conclude that plaintiffs were Jones Act seamen, the granting of summary judgment for defendants was inappropriate. Plaintiffs are entitled to a trial on the merits to establish their seaman status.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings.

REVERSED and REMANDED.

16. This is not to imply that a marine worker cannot demonstrate seaman status in the latter situation, but only that his case is more persuasive when his duties continue throughout the vessel's voyage.

1205, 1206 (5th Cir.1980) (claimant went to sea, but was denied seaman status), each is indicative. *See Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 327–28 (5th Cir.1977) (citing cases in which status was denied and the worker neither lived, ate nor slept on a vessel).