**Roger Dale SMITH**

v.

**ODOM OFFSHORE SURVEYS, INC., et al.**

**Civ. A. No. 80–469–B.**

United States District Court, M.D. Louisiana.

June 17, 1984.

Harold J. Lamy, Barker, Boudreaux, Lamy, Gardner & Foley, New Orleans, La., William F. Riley, Zuccaro, Riley, Pintard & Brown, Natchez, Miss., for plaintiffs.

W.S. McKenzie, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., Nigel E. Rafferty, Donald A. Hoffman, Lawrence J. Centola, Jr., Gerolyn P. Roussel, New Orleans, La., for defendants.

## OPINION

POLOZOLA, District Judge.

The issue presented to this Court is whether Roger Dale Smith was a Jones Act Seaman at the time of his accident and death. The Court, for reasons which follow, finds that Smith was a seaman.

Smith was employed by the defendant, Odom Offshore Surveys, Inc. (OOSI). On May 30, 1980, Smith was injured when a willow tree which he was cutting down struck him in the head while he was working for OOSI at Carr Pointe, Louisiana near the Mississippi River. This suit was filed on August 26, 1980. On November 24, 1980, Smith died as a result of his injuries, and the complaint was amended to substitute his widow and two minor children as the plaintiffs. Named as defendants were Aetna Casualty & Surety Company (Aetna) and Atlas Assurance Company of America (Atlas), the liability insurers of the defendant OOSI. OOSI also filed a third party complaint against its insurance agent, Alvarez-Donnaway-Passons, Inc. (Alvarez) and its errors and omission carrier, National Union Fire Insurance Company (National Union), for failure to provide the requested liability coverage. Summary judgment in OOSI's favor was granted on the third party complaint.

Thereafter, plaintiffs settled their claims against defendants and executed a full release. Plaintiffs' suit was dismissed on October 20, 1983, reserving to the defendants the right to litigate among themselves the question of whether Smith was a seaman at the time of his accident and death.

In order to determine the issue of seaman status, it is first necessary to articulate the test which will be applied to the facts of this case to determine if Smith falls into that category. The test for seaman status was set forth in *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir. 1959). The court in *Robison* stated that a workman is a seaman if he meets the following criteria:

> (1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and
>
> (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintainance during its movement or during anchorage for its future trips.

*Id.* at 779.

## THE FACTS OF SMITH'S EMPLOYMENT WITH OOSI

Roger Dale Smith had been employed by OOSI for a number of years prior to his death. Until shortly before the accident, Smith had been in OOSI's "Offshore Division". This division of the company was in the business of conducting offshore surveys for the oil and gas industry involving geophysical surveys, positional surveys for drill rigs, and construction surveys for pipeline construction. Smith's position in the offshore division was "party chief". As party chief, his responsibility was to plan, direct, and supervise the other workers on each job as well as to operate survey equipment. This work was performed primarily on vessels. Most of the vessels used were on long-term lease to OOSI. The leased vessels were furnished with an operational crew which usually included a captain, an engineer, a cook, and one or two deck hands. The captain of the vessel was responsible for the operation of the vessel and his crew and the party chief was

responsible for the services contracted for by OOSI's client.

Some of these leased vessels were outfitted with various equipment owned by OOSI, depending on the job for which the vessel and equipment were used. For example, the equipment used in geophysical surveys is very expensive and, therefore, was permanently mounted on one of the leased vessels. Depending on the job to be performed, Smith would be assigned to one of these leased vessels. On occasion, OOSI would also use a vessel owned by one of its clients. However, regardless of whether the leased vessels or the clients' vessels were used, all of Smith's duties were performed on the vessel, except for going to and from the vessel.

The evidence reveals that approximately one month before the accident, Smith requested and was granted a permanent transfer to OOSI's "Inland Waterways Division". The Inland Waterways Division is involved with hydrographic survey, geodetic survey, base line survey, and search and recover surveys along inland waterways such as the Mississippi River. In the Inland Waterways Division, Smith was to be trained as a hydrographic party chief who would do the actual surveys and sounding of the river at certain intervals by using computers, a Navatrace, a fathometer, and a printer.

At the time of Smith's transfer, the Inland Waterways Division was preparing to begin work on a contract with the Army Corps of Engineers. This contract required OOSI to check revetments for faults and to take soundings to determine if the banks of the Mississippi River were eroding. Revetments are concrete mats laid along the bottom of the river in areas known to erode.

The hydrographic survey work is done on the river from a boat. However, before this work is done, it is necessary to locate and set markers onshore. This sometimes necessitates the cutting of some trees which may obscure the markers. A "shore control party" sets the markers and works ahead of the hydrographic crews which follow along the river in boats.

As a hydrographic party chief, Smith was to be assigned to a vessel leased by OOSI named the Olivier I. His work was to be primarily performed aboard the vessel except for periodic checks for accuracy when he would go ashore to check the "benchline".

At the time the project began, the Olivier I was not yet outfitted and so Smith was temporarily assigned to a shore party to allow the shore phase of the work to move ahead, thereby enabling other hydrographic crews whose vessels were ready to begin working. About twenty OOSI employees were assigned to this particular job. The nearest town to the job site was Simmsport where some of the men, including Smith, stayed in a motel.

On the day of the accident, the shore party met at the job site at 7:30 a.m. and used the vessel M/V Goose for transportation to the various sites on the banks of the river, most of which could not be reached by truck. When the accident occurred, Smith was using a chainsaw to clear an area so that markers could be seen.

A review of the evidence reveals that a willow tree which Smith was cutting split and struck him in the head causing injuries which ultimately led to his death some months later.

Smith's only actual contact with a vessel on the day of the accident was prior to the accident when the M/V Goose was used to transport Smith to the various job sites along the river.

## THE ISSUE PRESENTED AND THE PARTIES' CONTENTIONS

The issue presented is whether the above recited facts of Smith's employment with OOSI meet the *Robison* test for seaman status and whether his assignment to shore duty took him out of that category.

The third party defendants, Alvarez, and its insurer, National Union, argue that Smith was not a seaman because Smith's only connection with a vessel on the day of the accident was with the M/V Goose.

These defendants contend that Smith's connection with the M/V Goose did not meet the *Robison* test because the M/V Goose was only used to transport Smith to the various sites on shore. In short, Alvarez and National Union contend that Smith did not have sufficient connexity with the M/V Goose to enable Smith to satisfy the *Robison* test.

Aetna argues that Smith was a seaman at the time of his injury because he had been a seaman when he worked in the Offshore Division and would have been a seaman in his new assignment in the Inshore Division as a hydrographic party chief. Aetna further argues that the assignment to the shore party was temporary and would not remove Smith from his status as a seaman.

Alvarez and National Union are correct that Smith's connection with the M/V Goose is probably not sufficient in and of itself to meet the *Robison* test. However, the inquiry then becomes whether Smith's other duties with OOSI were sufficient to give him seaman status. A review of Smith's other duties is required for the court to make this determination.

SMITH'S OFFSHORE DIVISION STATUS

■ As previously noted, the *Robison* test for seaman status requires that there be: (1) permanent assignment to a vessel; or, performance of substantial work on a vessel; and, (2) contribution to the function of the vessel or to the accomplishment of its mission.

While assigned offshore, Smith participated in projects such as rig moves, geophysical surveys, and search and reconnaisance-type assignments. Virtually all of Smith's duties in completing these assignments were performed on vessels. Most of the vessels used were from a group that OOSI had on long-term lease, some of which had OOSI's equipment permanently mounted thereon. Smith would normally go aboard one of these leased vessels and remain on the vessel while performing his duties. Smith would eat and sleep aboard the vessel until either the assignment was completed, or it was time to come in for supplies and fuel at which time OOSI would change crews.

Occasionally, work would be performed on a vessel owned by one of OOSI's clients.

It is clear from the facts that Smith was not permanently assigned to any one vessel. However, it is equally clear that most of his work was performed on a vessel that OOSI had on lease.

■ The mere fact that an employee's work places him on several different vessels will not preclude him being a seaman. *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832 (5th Cir.1982). *Braniff v. Jackson Avenue-Gretna Ferry, Inc.*, 280 F.2d 523 (5th Cir.1960). Furthermore, in *Bertrand v. International Mooring and Marine Co.*, 700 F.2d 240 (5th Cir.1983) the Fifth Circuit held that it is not necessary for the numerous vessels a worker may work on to be under the common ownership or control of his employer. The court in *Bertrand* stated:

> In light of the purposes of the Jones Act, we will not allow employers to deny Jones Act coverage to seaman by arrangements with third parties regarding the vessels operation or by the manner in which work is assigned.

*Id.* at 245. See, also: *Wallace v. Oceaneering Intern.* 727 F.2d 427 (5th Cir. 1984).

■ Therefore, insofar as Smith's duties with the Offshore Division of OOSI was concerned, the court finds that Smith has met the first prong of the *Robison* test because a substantial amount of his work was performed on vessels which were on longterm lease to OOSI. The evidence indicates that virtually all of his work was performed on these vessels.

Smith also meets the second prong of the *Robison* test insofar as his offshore duties were concerned because he contributed to the mission of whichever vessel he was assigned to.

Therefore, the Court finds Smith was a seaman while working in the Offshore Division of OOSI.

### SMITH'S STATUS IN THE INLAND WATERWAYS DIVISION

■ Smith's assignment with the Inland Waterways Division was to be as a hydrographic survey party chief. As such, he would be permanently assigned to a vessel. He was to be party chief on a vessel called the Olivier I as soon as the Olivier I was ready. He would perform virtually all of his work aboard the Olivier I on the Mississippi River. In this position Smith would meet the "substantial work" prong of *Robison* because a substantial amount of his work would be performed on the Olivier I. He also would meet the alternative criteria of permanent assignment to a vessel. As party chief, Smith would have been in charge of the Olivier's mission which was to perform the survey, and he would have operated the survey equipment from the vessel. Therefore, he also meets the second prong of *Robison* and would be classified as a seaman during the course of his regular duties in the Inshore Division.

### THE EFFECT OF TEMPORARY ASSIGNMENT ON SHORE

The question now becomes whether Smith's temporary assignment to the shore party where he was working at the time of his injury ended his status as a seaman.

The Fifth Circuit has stated that "some injuries on shore are covered by the Jones Act and some assignments by the employer to shoreside work do not end the employee's status as a seaman...." *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 453 (5th Cir.1980). See, also: *Wallace v. Oceaneering Intern.*, supra; *Savoie v. Otto Candies, Inc.*, 692 F.2d 363 (5th Cir.1982); *Higginbotham v. Mobil Oil Corporation*, 545 F.2d 422 (5th Cir.1977), *rev'd on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); and *Taylor v. Packer Diving & Salvage Company*, 342 F.Supp. 365 (E.D.La.1971). *Aff'd*, 457 F.2d 412 (5th Cir.1972).

The court in the *Guidry* court set out several factors to consider in determining whether an assignment ashore affects an employee's seaman status:

"... the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status, and other [relevant] factors ...."

*Guidry*, supra at p. 453. In *Wallace*, the Fifth Circuit stated:

"However, in addition to holding that random ownership of the vessels on which a plaintiff worked did not preclude his meeting the permanency or substantiality aspect of seaman status, *Bertrand* emphasized the 'character and extent' or 'nature and location' of the work performed as *affirmatively supporting* Jones Act coverage. Explaining that 'no particular factor is determinative of seaman status, but that each is indicative,' *Bertrand* held that

we must consider all the circumstances of claimants' employment to determine the relation of the vessel-related activities to claimants' total responsibilities. *Longmire [v. Sea Drilling Corp.]*, 610 F.2d [1342] 1347 n. 6.

700 F.2d at 247. *Accord Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir.1983). Specifically, *Bertrand* found persuasive that the nature of the anchorhandling crew's work was such that they never worked except in conjunction with vessels, that the workers actually went to sea and ate and slept aboard the vessels, and that the mission of the anchorhandling crew was coextensive with the mission of the crew. (Footnote omitted)

Based on the stipulations that the INTREPID was a vessel in navigation and Wallace contributed toward its mission, the seaman status of Wallace is established by his exposure to maritime perils with regularity and continuity, and the maritime nature of his primary duties." 727 F.2d at 435–36.

■ In the present case it appears that Smith's shore assignment was to be of

fairly short duration because it began in late May and Smith's vessel, the Olivier, was to be ready in early June. The assignment was directly related to OOSI's business and also was directly related to Smith's seaman employment as a hydrographic surveyor because this work had to be performed before the surveying on the river could be done. Also, it does not appear that Smith could have refused the assignment if he wanted to assume his duties as hydrographic party chief of the Olivier.

Smith was a seaman when he worked in the Offshore Division and his duties in the Inland Waterways Division would have been those of a seaman. His temporary assignment to land which was necessary in order for him to continue with his duties as a seaman did not take him out of the status of seaman. It is clear that the seaman status of Smith is established by his exposure to maritime perils with regularity and continuity, and the maritime nature of his primary duties.

THE APPLICABILITY OF THE OCEANOGRAPHIC RESEARCH VESSELS ACT

Finally, Alvarez and National Union raise the defense that Smith was a "scientific personnel" on an "Oceanographic Research Vessel" and as such is precluded from recovery under the Jones Act by virtue of The Oceanic Research Vessels Act, 46 U.S.C. Sections 441 et seq. The Fifth Circuit has held in *Presley v. Vessel Carribean Seal*, 709 F.2d 406 (5th Cir.1983) that the Oceanographic Research Vessels Act does preclude scientific personnel from recovering under the Jones Act. See also, *Sennett v. Shell Oil Co.*, 325 F.Supp. 1 (E.D.La.1971).

In the case before the court, however, there is no evidence that any of the vessels which Smith worked on were classified as Oceanographic Research Vessels. 46 U.S.C. 441(1) defines "Oceanographic Research Vessel" as:

"... a vessel that the Secretary of the Department in which the Coast Guard is operating finds is being employed exclusively in oceanography or limnology, or both, or exclusively in oceanographic research...."

46 C.F.R. § 3.10–1 provides the method by which a vessel is classified as an Oceanographic Research Vessel. There is no evidence that these provisions were complied with for any vessel on which Smith worked. Therefore, the Oceanographic Research Vessels Act is not applicable under the facts of this case.

CONCLUSION

In summary and conclusion, the court finds that Smith was a seaman while assigned to OOSI's Offshore Division, and his duties in the Inland Waterways Division would have been those of a seaman once his vessel was ready. His temporary shore duty which was directly related to his seaman duties and was to be of relatively short duration, did not take him out of that status. Further, the Oceanographic Research Vessels Act does not apply to this case. Therefore, Smith was a seaman at the time of his injury within the meaning of the Jones Act.

The parties shall have ten days from the date of this opinion to submit a proposed judgment to the court in accordance with this opinion.