Darrell and Tammy **GATES, Individually and on Behalf of their Minor Children, Cassey Lynn Gates and Sissy Renee Gates**

v.

**DELTA CORROSION OFFSHORE, INC. and Sub Sea International, Inc.**

Civ. A. 87–2719.

United States District Court, W.D. Louisiana, Alexandria Division.

April 17, 1989.

Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, La., for plaintiffs.

James E. Diaz, Sr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for defendant.

## RULING

LITTLE, District Judge.

The plaintiff, Darrell Gates, brought this action to recover damages allegedly suf-fered while performing a dive in the course of his employment with defendant, Sub Sea International ("Sub Sea"). In addition to asserting claims under the Jones Act, 46 U.S.C.App. § 688, the plaintiff has invoked this court's admiralty jurisdiction by stat-ing claims under the general maritime law. Claiming that the plaintiff cannot qualify as a seaman, Sub Sea has moved for sum-mary judgment.

## I. FACTS

The following facts are undisputed. Sub Sea employed the plaintiff as a div-er/tender from August of 1985 until the time of the subject injuries on 21 December 1985. During the course of his employ-ment, the plaintiff was assigned randomly to specific jobs. Often the assigned jobs involved work to be performed on vessels; other times the plaintiff was assigned to perform tasks on platforms, pipelines or other fixed objects. On 20 December 1985, Sub Sea assigned the plaintiff to a job ordered by defendant Delta Corrosion Off-shore ("Delta"). That job, which was to run through 27 December, required the plaintiff to dive from Delta's platform and perform work on the platform legs. The plaintiff would be transported to and from the platform, and quartered for the dura-tion of the job, on the M/V SHOGUN, a vessel owned and operated by Delta. The plaintiff never completed the Delta job, due to his injuries of 21 December. This action ensued.

## II. JONES ACT SEAMAN STATUS

In order to qualify for the liberal remedies provided by the Jones Act, a plaintiff must possess the status of a "sea-man." 46 U.S.C.App. § 688. That is, he must be considered "a member of a crew of a vessel." *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1070 (5th Cir.1986). Although these terms are left undefined by the statute, the Fifth Circuit has provided considerable guidance. In the landmark case of *Offshore Company v. Robison,* 266 F.2d 769 (5th Cir.1959), the following stan-dard was announced:

[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured work-

man was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779 (reaffirmed by *Barrett,* 781 F.2d at 1074).

■ The first element of the *Robison* test, that the worker be permanently assigned to or perform substantial work on the vessel, must be read in the disjunctive. *Id.* at 1073. Moreover, the worker need not be so associated with a specific vessel; an identifiable fleet of vessels will suffice. *Id.* at 1074. Such a "fleet" is an "identifiable group of vessels acting together or under one control." *Id.* Even the requirement of common control has been relaxed so as to find a permanent assignment under certain circumstances where only the employer's preference dictated whether the group of vessels had common ownership. *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 248 (5th Cir.1983) (anchor handlers). This special category has also been applied to workers who spent all or virtually all of their time on vessels, but whose association with any specific vessel is only for the duration of a single mission. *Wallace v. Oceaneering International,* 727 F.2d 427 (5th Cir.1984) (diver engaged in work on vessels). This exception is limited, however, and the Fifth Circuit has repeatedly refused to confer seaman status on individuals who worked on fixed platforms but were quartered, even with some minor duties, on separate tender vessels. *E.g., Graham v. Milky Way Barge, Inc.,* 824 F.2d 376 (5th Cir.1987); *Miller v. Rowan Companies, Inc.,* 815 F.2d 1021 (5th Cir.1987); *Munguia v. Chevron Co., U.S.A.,* 768 F.2d 649 (5th Cir. 1985); *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980).

■ The plaintiff in the instant matter has failed to satisfy the permanent assignment prong of the first *Robison* element. Recognizing that he cannot claim service on a fleet of vessels with common ownership or control, the plaintiff instead points to the inherently maritime nature of the plaintiff's duties as a diver and urges that the requirement of assignment to an identifiable vessel or fleet of vessels be deemed inapplicable. In that context, the plaintiff characterizes himself as having been "permanently assigned to the SHOGUN for the duration of the mission" of 20–27 December 1985. This suggested application of *Wallace* overlooks the fact that the instant plaintiff did not spend all of his time working on, or preparing to work on vessels. Indeed, the assignment which resulted in the plaintiff's injuries was centered not on the plaintiff's association with the SHOGUN, but on the plaintiff's work on the submerged leg of Delta's fixed drilling platform. The plaintiff, therefore, cannot be considered a permanent member of a vessel.

■ The alternative requirement of the first *Robison* element, that the plaintiff perform a substantial part of his work on the vessel, has also been subjected to repeated judicial analysis, though an exact formula has not emerged. Claimants have been required to show "a vessel relationship that is substantial in point and time and not merely spasmodic"; *Barrett,* 781 F.2d at 1074; *Bertrand,* 700 F.2d at 247; and "more than a transitory connection with a vessel." *Barrett,* 781 F.2d at 1074; *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 326 (5th Cir.1977). The "permanence" or "substantial work" requirement is intended "to deny seaman's status to those who come aboard a vessel for an isolated piece of work," *Bertrand,* 700 F.2d at 247, "while still affording Jones Act coverage to workers whose duties are truly navigational [despite having] serve[d] aboard a vessel for a relatively short period of time." *Id.* Naturally, such imprecise formulations of the permanence requirement would ordinarily require the determination to be made by the trier of fact. *Barrett,* 781 F.2d at 1074. Nevertheless, summary judgment is appropriate when the undisputed facts do

not support a reasonable evidentiary basis for an inference in favor of the plaintiff's being classified as a seaman. *Id.; Wallace,* 727 F.2d at 432.

■ The "substantial work" requirement is also unmet by the instant plaintiff. The plaintiff's connection with the SHOGUN was intended, at most, to last one week. His presence on the SHOGUN, moreover, was essentially fortuitous, as the plaintiff's primary role was the work on the drilling platform leg. Although the plaintiff asserts that he assisted with the performance of some deckhand duties, this was clearly incidental to the primary reason for his presence on the vessel—transportation before and after, and off-hours quartering during the work on the platform for the plaintiff and his equipment. The plaintiff does not qualify as the "truly navigational" worker to whom *Bertrand* referred as the object of protection by the "substantial work" requirement. *See also Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1347 and n. 6 (5th Cir.1980).

■ Even were this court to find a permanent assignment of the plaintiff to the SHOGUN, the plaintiff would nonetheless fall short on the second part of the *Robison* standard: that he contributed to the function of the vessel or the accomplishment of its mission. The SHOGUN's mission, put simply, was to transport and house the divers and equipment needed by Delta for the work on the platform leg. The plaintiff, notwithstanding his incidental performance of certain tasks on the vessel, was merely the beneficiary, or object of the SHOGUN's mission. The plaintiff no more contributed to the SHOGUN's mission than does a passenger on a ferry. Accordingly, the court concludes that the plaintiff cannot, as a matter of law, be accorded seaman status under the Jones Act.

## III. GENERAL MARITIME CLAIMS

The plaintiff next contends that even if, as has now been decided, his Jones Act claim must be dismissed, his claim against Sub Sea of negligence and unseaworthiness under the general maritime law must be

allowed to stand. The plaintiff apparently concedes that if he cannot be considered a seaman, he would consequently be classified as a longshoreman within the meaning and protection of the Longshore & Harbor Workers Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* Nonetheless, the plaintiff argues that by electing the state workman's compensation remedy over that provided by the LHWCA, his claims against his employer under the general maritime law are not precluded.

As amended in 1972 and 1984, the LHWCA provides a federal compensation remedy to most maritime workers against their employer for injuries suffered in the course of employment. 33 U.S.C. §§ 902(2)–902(4). Like most workers compensation statutes, the LHWCA removes fault as an element, and instead, specifies the amount of recovery allowed for any given injury, disability, or death. The LHWCA further stipulates that: "The liability of an employer specified in [33 U.S.C. § 904] shall be exclusive and in place of all other liability or in admiralty on account of such injury or death." 33 U.S.C. § 905(a). Recognizing the stumbling block imposed by the exclusivity provision, the plaintiff argues that by not invoking his rights under the LHWCA, he is not bound by the limitation stated in section 905(a).

The plaintiff correctly points out that under certain circumstances, the LHWCA and a state worker's compensation remedy may both be available to an injured worker. The courts have held that when Congress expanded the scope of the LHWCA in 1972, Congress did not intend the exclusivity language to pre-empt the state remedy, but rather, to complement it. *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980); *Logan v. Louisiana Dock Co., Inc.,* 538 So.2d 200 (La. 1989). In addition, the Fifth Circuit has held that federal general maritime law remedies remain available to a maritime worker who fails to qualify under both the Jones Act and the LHWCA, regardless of the presence of an exclusive remedy provision in the state worker's compensation statute. *King v. Universal Electric Con-*

*struction,* 799 F.2d 1073 (5th Cir.1986). The plaintiff now urges that this court take the next step and allow a general maritime claim to stand, as a supplemental remedy to the state worker's compensation statute, notwithstanding the availability to the plaintiff of a federal remedy under the LHWCA.

 The plaintiff has failed to supply authority in support of such a construction, as has the court in an independent search. To the contrary, the Supreme Court in *Sun Ship* construed the legislative intent behind the 1972 amendments to the LHWCA, which extended the scope of the LHWCA's coverage shoreward, as a quid pro quo between the employer and the maritime employee. The employee, under the LHWCA, receives benefits in excess of those provided by most worker's compensation statutes. The employers, in return, were relieved of any potential liability under the general maritime law, which had remained a viable remedy when the state compensation laws were the only statutory remedy to land-based maritime workers. *Sun Ship,* 447 U.S. at 724–25, 100 S.Ct. at 2438–39; H.R.Rep. No. 1441, 92d Congress, 2d Sess. 1, *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4699. Although the legislative materials only specifically mention the maritime claim of unseaworthiness, allowance of a negligence suit would also clearly violate the intended quid pro quo. The damage award referred to by the House report as the expense that the shipping companies were desirous of eliminating is the same for either negligence or unseaworthiness claims. Moreover, to allow, as the plaintiff desires, a plaintiff to elect between the LHWCA remedy and the combined remedies of the state worker's compensation law and the federal general maritime law, would undercut and render meaningless the scheme chosen by Congress and imposed in the 1972 amendments. Clearly, the exclusivity provision of section 905(a) must be read as a bar to any other federal remedy against the employer whenever the LHWCA remedy is available, except as otherwise provided by the LHWCA.

For the foregoing reasons, the court determines that there exists no genuine issue as to any fact material to either the issue of the plaintiff's Jones Act seaman status, or the general maritime law liability of Sub Sea. Accordingly, the motion for summary judgment filed by the defendant, Sub Sea International, Inc., is GRANTED.

An appropriate judgment will issue.