Christopher James WEBSTER and
Linda Webster

v.

SEAHORSE FLEET, INC., et al.

Civ. A. No. 84–3153.

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

June 19, 1986.

Pamela A. Tynes, Morgan City, La., for plaintiffs.

W.K. Christovich, New Orleans, La., for Seahorse Fleet, Inc.

Peter L. Hilbert, Jr., New Orleans, La., for Martech Intern., Inc.

David R. Dugas, New Iberia, La., for Texaco, Inc.

## RULING

SHAW, District Judge.

Plaintiff, Christopher Webster, for a second time has filed a motion for summary judgment asking the Court to find him a seaman as a matter of law on the grounds that the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences from those facts. The law is clear that when the evidence can lead only to the conclusion that the injured person was a crew member, summary judgment declaring his status is proper. Additional evidence submitted in support of the second motion convinces the Court that this matter deserves reconsideration. The defendants have not submitted any evidence to raise any genuine issue as to any material fact and only contend that they have had no opportunity to investigate into the truthfulness of plaintiff's affidavits nor to uncover through such investigation or cross examination of the plaintiff any inconsistencies or omitted material. This accident occurred more than two and one-half years ago, suit was filed in 1984 and the plaintiff has been deposed. The issue involved herein deals with status and no one would be in possession of more information on the point than plaintiff's employer, Martech International, who, among others, opposes the motion. Therefore, the Court will

make a determination on the basis of the evidence before it.

### Findings of Fact

Plaintiff was employed by Martech International, Inc. in 1982 as a tender (one who runs the equipment top side) and worked in the Martech shop and performed some duties aboard vessels acting as a tender. During the 1983 diving season (April through November), plaintiff commenced diving on a regular basis and spent all of his time aboard vessels except for the days he loaded and unloaded diving equipment between the shop and the vessel to which he was assigned.

Martech did own vessels during the period of plaintiff's employment but he was never assigned to any of those vessels during 1983. Instead plaintiff was assigned to five diving jobs on six vessels that had been procured by the oil companies that had contracted with Martech for diving jobs. Although plaintiff spent practically all of his work time on the vessels during his assignments, the percentage of diving time would vary on each from 30% to 100%. The total duration of those assignments during the 1983 diving season was approximately three months. Plaintiff's assignments on all of the vessels were co-extensive with their missions and he ate and slept on all of the vessels to which he was assigned. The record is not clear what the plaintiff did during the 1983 diving season when he was not working on one of the five assignments; however, the Martech Employer's First Report of Injury indicates that the plaintiff was "on call" on his days off and there are no counter affidavits to indicate any land work.

Plaintiff's first job in 1983, an inspection diving job, commenced in May for Shell Oil Company and was conducted on the M/V State Ivory and the M/V State Royal. Due to an ear infection he only spent 30% of his time diving. The duration of the assignment was four to five weeks.

Plaintiff's second job in 1983 was performed for Kerr-McGee on the M/V Summer Sun and was also an inspection diving job which lasted approximately a month. Plaintiff spent approximately 75% to 80% of his work time diving during this assignment.

The plaintiff's third diving job was for Getty Oil Company aboard the M/V PBR. This assignment was a water blasting job which lasted seven to ten days and the diving accounted for approximately 80% of plaintiff's work time aboard the vessel.

Plaintiff's next job, inspection diving aboard the M/V Tear Drop, was a continuation of the job aboard the M/V Summer Sun for Kerr-McGee which lasted ten to twelve days, during which time plaintiff spent 90% of his work time diving.

Plaintiff's final job was aboard the M/V Salton Seahorse where he sustained the injury involved in this suit. The Salton Seahorse had a traditional crew of five to man the vessel. It was owned by Seahorse Fleet, Inc. and operated by Offshore Crews, Inc., also defendants herein. Plaintiff performed 90% of his work on this assignment aboard the vessel. The assignment called for Martech to repair boat bumpers on Texaco platforms. At the time of the accident, plaintiff was aboard the platform of defendant, Texaco, to push the two houser lines to the inside of the boat bumper when a surge carried the vessel away from the platform causing the lines to tighten and catch the fingers of plaintiff's hands between them and knock him off the boat bumpers. Plaintiff worked on this assignment eighteen days prior to his accident and the job was terminated on November 22, 1983, the day after the accident due to poor weather.

### Conclusions of Law

■ The plaintiff's assignment to the Salton Seahorse, taken alone, amounted to approximately 10% of his work time during his entire period of employment in 1983. However, plaintiff did not divide his time between vessel and land (platform) work during that year and only worked on vessels. Whether plaintiff can establish seaman status as a matter of law on the basis

of his connection with the Salton Seahorse without reference to the fleet concept will not be decided now for the following reasons. In *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (5th Cir.1986), the plaintiff spent as much as 70% of his time aboard a vessel during the eight-day period immediately prior to his injury. Therein, the Court took the longer view and looked at his entire period of employment in determining his status as a crew member. Status cannot be determined solely on the basis of what the plaintiff was doing when injured but must also be decided on what the plaintiff was doing in the past. Since that investigation must be made and necessarily involves consideration of the fleet concept which is an alternative ground for seaman's status herein, that will be the starting point of the Court's analysis of seaman's status. Sometimes it's difficult to decide which comes first—the chicken or the egg.

 Plaintiff's alternative claim is that the plaintiff was a member of the crew of a fleet or group of vessels that he was assigned to during the 1983 diving season. Plaintiff is correct in his assertion that he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job which included diving activities in May of 1983. *Barrett v. Chevron, supra,* stands for the proposition that if an employee's regularly assigned duties require him to divide his time between vessel and land (platform) work, his status is determined in the context of his entire employment with his current employer. If an employee's job assignment during his term of current employment has changed prior to the accident a shorter period may be considered to determine his status. In this case it is clear that the plaintiff's duties had changed from shop work to vessel assignments and the latter is the appropriate period to consider for the purpose of seaman status.

The crucial question before this Court is whether or not the plaintiff is a "Bertrand" seaman whose status is not controlled by a literal or classical application of the *Robison* test (*Offshore v. Robison,* 266 F.2d 769 (5th Cir.1959)) or the particular ownership or chartering arrangement of the vessel or vessels on which he spends practically all of his time. *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir.1983). To apply the above principle, we necessarily must conclude that it is not repugnant to the definition of "fleet" set forth in *Barrett* which requires an "identifiable group of vessels acting together or under one control." *Barrett v. Chevron, supra,* at 1074.

In *Bertrand,* the plaintiff spent substantially all of his time performing vessel-related work; the record revealed that the job was co-extensive in time with the mission of the vessel; the plaintiffs spent practically their entire time in preparing to work or working from a vessel; the plaintiffs were continuously subject to the perils of the sea like blue water seamen; the plaintiffs were engaged in classical seaman work (anchor handlers); and, they ate and slept aboard the vessels.

The Court must decide if anything less than the above factors found in *Bertrand* would be sufficient to find seaman status as a matter of law. An argument could be made that the plaintiff's work herein, although it clearly contributed to the mission of the vessel, did not constitute "traditional seaman's duties defined in *Barrett* as work closely related to the movement of vessels" (footnote 13 at page 1075).

The Fifth Circuit in *Barrett* refused to accept the approach taken in *Johnson v. John F. Beasley Construction Co.,* 742 F.2d 1054 (7th Cir.1984) which would alter the second prong of the *Robison* test and grant crew member status only to those workers who perform navigational functions or further the transportation function of the vessel. If this restrictive approach is unacceptable to determine whether one is a crew member of a single vessel, this Court will not require it to determine if one is a seaman by reason of his assignment to a group of vessels.

Plaintiff's position also finds support, at least in principle, in *Wallace v. Oceaneering Int'l.*, 727 F.2d 427 (5th Cir.1984). The Court has already alluded to the possible differences between anchor handlers and divers. While anchor handlers may always qualify as seamen, a diver does not become a seaman just because he is a diver. At times, divers set up on land and work on vessels or even fixed structures in water where they literally walk or swim to work and they are not seamen. *See, Casaceli v. Martech Intern., Inc.*, 774 F.2d 1322 (5th Cir.1985). Although divers do not always go down to the sea in ships, they always do perform their business in great waters. It is also noted that *Wallace* was under consideration for rehearing for over a year and before anyone had a chance to tighten the noose around Wallace's neck, the Court was notified that all claims had been disposed of by the parties and a mandate was properly issued. There may still be a few "wanted posters" out on Wallace, but this Court will decline to collect any reward.

Only three days ago, the Fifth Circuit Court of Appeals in the case of *"Lonnie Pickle, Maryland Casualty Company v. International Oilfield Divers, Inc."*, 791 F.2d 1237, cited the *Wallace* decision with approval in a very similar case. Therein, the plaintiff, Pickle, was assigned to dive from a barge pursuant to a contract between his employer and the platform owner and injured his back fifteen feet below the waterline when a surge of water thrust him against the jacket leg of the fixed offshore platform which was under construction. At the time of the accident Pickle was diving from the platform rather than his assigned barge to do the work required to be performed that morning which required the setting of a pin to secure a brace that ran from a gusset plate adjacent to the jacket leg of the platform. During Pickle's employment his employer either secured or was provided barges for its diving operations and at the time of the accident it did not own any vessels. Pickle had been diving for his employer for approximately three years prior to the accident and 90% of his assignments were on two specific barges and his jobs lasted from three to forty-five days. Relying on *Wallace* to affirm the district court's finding of seaman status, the Court stated at page six of its opinion:

The trial court found that Pickle spent 90% of his work-time during his employment with IOD aboard an identifiable fleet of barges. In addition, as a 'commercial diver, who embodies the traditional and inevitably maritime task of navigation, [Pickle had] the legal protections of a seaman when a substantial part of his duties are performed on vessels.' *Wallace v. Oceaneering Int'l.*, 727 F.2d 427, 436 (5th Cir.1984). This is so because '[i]t is the inherently maritime nature of the tasks performed and perils faced by his profession, and not the fortuity of his tenure on the vessel from which he makes a particular dive on which he was injured, that makes Wallace a seaman.' *Id.* We perceive no erroneous fact-finding and no error of law in the trial court's determination that Pickle was a seaman.

In this case, the plaintiff spent substantially all of his time working on vessels. His job was co-extensive in time with the mission of the vessels. Practically his entire employment during the period in question was involved in preparing to work or working from a vessel. He was continuously subject to the perils of the sea, like blue water seamen, if not more so. He always ate and slept aboard the vessel, and in plain language, the plaintiff did not work on land anymore.

The Court finds that the plaintiff was more or less permanently assigned to an identifiable fleet of vessels and did a substantial part of his work on the vessel or vessels during the critical period of employment. The question of whether or not the plaintiff is a seaman by virtue of his connection with the Salton Seahorse is moot. The Court finds that the plaintiff is a seaman and the motion for summary judgment will be GRANTED.