Gilbert H. KELLEY, Plaintiff-Appellant,

v.

KADINGER MARINE SERVICE, INC., Defendant-Respondent,

ABC INSURANCE COMPANY, c/o Mutual Marine Office, Inc., Defendant.

Court of Appeals

*No. 93–2845. Submitted on briefs August 2, 1994.—Decided January 10, 1995.*

(Also reported in 528 N.W.2d 462.)

32

33

For the plaintiff-appellant the cause was submitted on the briefs of *Davis & Kuelthau, S.C.*, with *David W. Neeb* and *Harney B. Stover, Jr.* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Belgrade and O'Donnell, P.C.*, with *Steven B. Belgrade, John A. O'Donnell*, and *Andrea J. Steinhagen* of Chicago, Illinois, and *Herbon, McLaughlin & Herbon*, with *Geoffrey M. Herbon* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J.   Gilbert H. Kelley appeals from the judgment granting summary judgment to Kadinger Marine Service, Inc., and from the order denying his motion to reconsider and vacate the judgment. Kelley argues that genuine factual issues remain regarding whether he was a "seaman" eligible for coverage under the Jones Act and, therefore, that the trial court erred in granting summary judgment.[1] We agree with Kelley and reverse.

---

[1] In his brief to this court, Kelley also offers the passing argument that, "Indeed based on the unrefuted testimony of Gil Kelley, the trial court would have been entirely justified in

34

The relevant facts are not in dispute. During his summer vacations from college in 1987, 1988, and 1989, Kelley worked for Kadinger, a Wisconsin corporation engaged in the marine construction and towage business. On June 5, 1989, about three weeks after resuming his employment with Kadinger, Kelley was working from one of Kadinger's barges at a "cofferdam"[2] on the Menomonee River when he fell from a beam next to the excavation behind the dam and suffered injuries. Kelley sued claiming negligence, unseaworthiness, and maintenance and cure, and seeking coverage under the Jones Act, 46 U.S.C. § 688. In the alternative, Kelley also sought damages under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901, *et seq.* Kadinger answered contending, *inter alia,* that Kelley was not a "seaman" and, therefore, was not eligible for Jones Act coverage. Kadinger affirmatively alleged that Kelley was a harbor worker and thus entitled only to those worker's compensation remedies available under the LHWCA.[3]

Granting summary judgment in favor of Kadinger, the trial court concluded that Kelley was not a seaman under the Jones Act. The trial court explained:

---

finding that as a matter of law, he <u>was</u> a Jones Act seaman." He has not, however, specifically supported that argument on appeal.

[2] A "cofferdam" is "a temporary water-tight enclosure (as of piles packed with clay or of metal plates) from which the water is pumped to expose the bottom of a body of water and permit construction (as of foundations or piers)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 439 (1976).

[3] In its summary judgment submissions, Kadinger also argued that Kelley's recovery was alternatively governed by the Wisconsin Worker's Compensation scheme.

The existence and involvement of a vessel is central to a test of seaman status. In the case before the Court, the stationary barge involved was constructed and used primarily as a work platform. It was moored or otherwise secured at the time of the accident, and although it was capable of movement and sometimes moved across navigable waters in the course of normal operations, its transportation function was incidental to its primary purpose of serving as a work platform.

.. . .

In this case the Plaintiff filed a claim under the Jones Act immediately after the accident in question. . . . The plaintiff buttresses his position that, in the summer of 1989, his status was that of a seaman predicated upon the duties which he performed in 1989, including one trip [aboard a Kadinger tug boat] to bring a barge back from Green Bay to the Milwaukee Area and activities on his part in connection with the vessels owned and operated by the Defendant; that is three tugs, a motor launch and eight barges.

[T]he Plaintiff concludes that during the summer of 1989, at least the first few weeks thereof, 34 percent of the Plaintiff's wages were classified as Jones Act . . . duties, which would bring him under the circumstances within the purview of the Jones Act.. . .

Finally, Plaintiff takes the position that, looking at the entirety of his 1989 employment with the Defendant, it is apparent that the Plaintiff was arguably a Jones Act seaman and to the extent that any doubt exists on that issue, it is inappropriate for this Court to rule to the contrary as a matter of law and this issue should be left to the jury.

. . . After reviewing in detail the extensive briefs, attachments, affidavits and documents submitted, and an evaluation of the Plaintiff's activities for the Defendant in all three of the years involved and with particularity the activity in the weeks involved in 1989, this Court reaches the conclusion that the Plaintiff was not a seaman within the purview of the Jones Act, and that his remedy for his injury is clearly with the LHWCA or the State Workmen's Compensation system. The stationary work barge was a structure constructed and used primarily as a work platform, moored or otherwise secured at the time of the accident, and although capable of movement, any such movement was incidental to its primary purpose of serving as a work platform. In this case the employee's regularly assigned duties required him to divide his time between vessels and land, and his status as a crew member is determined by in [sic] the context of his entire employment with his current employment.

(Citations omitted.)

■

Clearly, the trial court based its decision on the finding that the barge from which Kelley fell was a work platform, not a "vessel." Less clearly, it appears that the trial court also may have based its decision on the conclusion that whether Kelley was a seaman "is determined by in [sic] the context of his entire employment with his current employment"—that is, that the determination derived from consideration of "all three of the years involved" in Kelley's employment, not just 1989 when he was injured. We conclude that neither rationale provides a proper legal basis for summary judgment in this case.

37

Our review of a trial court's grant of summary judgment is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment may not be granted if there is a genuine issue of material fact. RULE 802.08(2), STATS.; *Green Spring Farms*, 136 Wis. 2d at 315, 401 N.W.2d at 820. In this case, the summary judgment submissions established genuine issues of material fact that ultimately will lead to the determination of whether Kelley was a seaman.

The Jones Act, 46 U.S.C. App. § 688(a), in relevant part provides:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

Thus, the Jones Act extended to seamen the rights accorded railway employees under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq*. The Jones Act, however, failed to define "seaman" and, as a result, the definition has evolved in the case law. *See McDermott Int'l., Inc. v. Wilander*, 498 U.S. 337, 342-355 (1991). The definition of "seaman" under the Jones Act presents a case of first impression in our state case law. The federal authorities, however, offer substantial guidance.

In *International Stevedoring Co. v. Haverty*, 272 U.S. 50 (1926), the Supreme Court held that the term "seaman" could include longshoremen employed in maritime work on navigable waters. Partly in response to *Haverty*, Congress enacted the Longshore and

Harborworker's Compensation Act, 33 U.S.C. § 901, *et seq.*, removing longshoremen from Jones Act coverage and, instead, providing LHWCA payments to maritime workers injured over navigable waters. *McDermott*, 498 U.S. at 347; *Offshore Co. v. Robison*, 266 F.2d 769, 774 (5th Cir. 1959). The LHWCA, however, also specified an exception that continued Jones Act coverage for those employees who were "members of a crew of any vessel." *McDermott*, 498 U.S. at 347; *see* 33 U.S.C. § 902(3). The phrase "member of a crew of any vessel" and the term "seaman" were "closely related," and often were "used interchangeably," *McDermott*, 498 U.S. at 348, and, as a result, the remedies under the Jones Act and under the LHWCA were deemed to be mutually exclusive. *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 6-8 (1946). Finally, in 1991, the Supreme Court "recognize[d]" the LHWCA and the Jones Act as "a pair of mutually exclusive remedial statutes that distinguish between land-based and sea-based maritime employees." *McDermott*, 498 U.S. at 353. Thus, because the Jones Act provides the potential for greater recoveries than the LHWCA, considerable litigation has required courts to consider numerous factual scenarios and determine whether a claimant is a "seaman" or "member of a crew" eligible for Jones Act coverage or, rather, some other kind of maritime worker within the parameters of the LHWCA.

The trial court's concentration on the issue of whether the Kadinger barge was a "vessel" is understandable. After all, many decisions determining whether an employee is a "member of a crew of any vessel" have first focused on whether any "vessel" was involved because, if not, the employee cannot be a seaman eligible for Jones Act coverage. In *Robison*, the fifth circuit court of appeals analyzed "[w]hen is a

roughneck a seaman," in the case of an oil worker on an offshore drilling barge. *Robison*, 266 F.2d at 771. *Robison* set what proved to be a seminal standard for Jones Act seaman status:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779. Countless Jones Act cases have applied this *Robison* standard and, in *McDermott*, the Supreme Court cited with approval a portion of the *Robison* criteria and held "that a necessary element of the [seaman status employment-related] connection is that a seaman perform the work of a vessel." *McDermott*, 498 U.S. at 355.

Although our legal voyage thus begins on a vessel, we still are far from our destination. Kelley does not base his claim on his "connection" to the barge from which he fell. He does not maintain that he "was assigned permanently to a vessel." Instead, he contends that he was, in effect, assigned to a "fleet" of several vessels under Kadinger's ownership, a situation not explicitly encompassed by the *Robison* standard but included according to subsequent authorities launched from the *Robison* port. Kelley is correct.

40

In *Braniff v. Jackson Ave.-Gretna Ferry Inc.*, 280 F.2d 523 (5th Cir. 1960), the court considered the status of a maintenance superintendent and his subordinate who were employed by a company that owned and operated several ferry boats. *Id.* at 525. Although neither employee was "assigned to, nor did he stand a watch, aboard any one of the ferries," *id.* at 526, the court, applying the *Robison* test, *id.* at 526-527, reversed the summary judgment granted to the ferry company. Concluding that the employees might be eligible for Jones Act coverage, the court explained:

> The usual thing, of course, is for a person to have a Jones Act seaman status in relation to a particular vessel. But there is nothing about this expanding concept to limit it mechanically to a single ship.. . . [W]e see no insurmountable difficulty with respect to element (1) [of the *Robison* test] in the fact that such person is "assigned permanently to" several specific vessels "or perform[s] a substantial part of his work on the" several specified "vessel[s]."

*Id.* at 528 (citing *Robison*; first set of brackets added). Since *Braniff* was decided, it has come to be well established that an employee serving a fleet, rather than working on a single vessel, potentially qualifies as a seaman eligible for Jones Act coverage. *See Bazile v. Bisso Marine Co.*, 606 F.2d 101, 104-105 (5th Cir. 1979), *cert. denied*, 449 U.S. 829 (1980); *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 281-283 (5th Cir. 1981); *Bertrand v. Int'l. Mooring & Marine, Inc.*, 700 F.2d 240, 244-248 (5th Cir. 1983), *cert. denied*, 464 U.S. 1069 (1984); *Estate of Rainsford v. Washington Island Ferry Line, Inc.*, 702 F. Supp. 718, 723-724 (E.D. Wis. 1988).

41

Here, as the trial court noted, Kelley's theory supporting his seaman status was:

> predicated upon the duties which he performed in 1989, including one trip [aboard a Kadinger tug boat] to bring a barge back from Green Bay to the Milwaukee Area and activities on his part in connection with the vessels owned and operated by the Defendant; that is three tugs, a motor launch and eight barges.

Therefore, his submissions were sufficient to establish a "connection" to a fleet, thus precluding summary judgment on the basis that the Kadinger barge was not a vessel.

The submissions established that Kelley's duties included ones on land as well as on water. Generally, when a Jones Act claimant's duties are divided between sea and land duty, the trier of fact considers the entire context of employment to determine whether the claimant has seaman status. As the Fifth Circuit Court of Appeals, explained in *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986), "if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as crew member is determined 'in the context of his entire employment' with his current employer." *Id.* at 1075. The determination based on the entire employment context, however, "is not an inflexible requirement," *id.*, and is qualified by two exceptions.

First, where an "employee's permanent job assignment during his term of employment has changed," the

determination of seaman status may be based on the period of the new duties. *Id.; see also Webster v. Seahorse Fleet, Inc.*, 637 F. Supp. 151, 153 (W.D.La. 1986) (plaintiff "entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job" where plaintiff had assumed new duties with the same employer shortly before being injured). Second, where an employee returns to work after a substantial break in service, the determination of seaman status may be based on the later time period following return to the job. *Patton-Tully Transp. Co. v. Ratliff*, 797 F.2d 206 (5th Cir. 1986). This latter exception applies to the instant case.

In *Patton-Tulley*, a case in which an employee first performed dock work but, after an absence of several months, returned and worked an increasing amount of time in salvage operations, *id.* at 208, the Fifth Circuit Court of Appeals examined the first prong of the *Robison* test to determine whether Ratliff, the employee, had performed "a substantial portion of his work aboard vessels." *Id.* at 210. The court concluded:

> Because of the four-month gap in Ratliff's employment, the final six months was the "employment term" relevant to the *Robison* determination. Although *Barrett* stated that seaman status is to be "determined 'in the context of [an employee's] *entire* employment' with his current employer," this statement referred to an employee who had worked continuously over an entire year. The district court correctly found on the facts of this case that the four-month hiatus in Ratliff's employment was a significant break requiring separate evaluation of his duties during the re-employment period.

*Id.* (brackets and emphasis in *Patton-Tully*; citation omitted).

Here, there is no dispute that a substantial temporal break preceded Kelley's 1989 employment with Kadinger and, we also note, that Kelley also was performing different duties during his 1989 employment. Kadinger's own records classified thirty-four percent of Kelley's 1989 employment as "Jones Act—Deck Hand." Kelley's calculations suggest that a greater percentage of his work would qualify. Therefore, material factual issues remain regarding whether "a substantial part of his work," under the *Robison* test, was as a seaman, thus precluding summary judgment on the basis of "all three of the years involved."

As the Supreme Court explained:

> the question of who is a "member of a crew," and therefore who is a "seaman," is . . . a mixed question of law and fact. When the underlying facts are established, and the rule of law is undisputed, the issue is whether the facts meet the statutory standard.
>
> It is for the court to define the statutory standard. "Member of a crew" and "seaman" are statutory terms; their interpretation is a question of law. The jury finds the facts and, in these cases, applies the legal standard, but the court must not abdicate its duty to determine if there is a reasonable basis to support the jury's conclusion. If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a "member of a crew," it is a question for the jury. In many cases, this will be true. The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it.

*McDermott*, 498 U.S. at 356 (citations omitted). We conclude that in this case neither the specific status of

44

the barge nor the entire three year period of Kelley's employment was determinative as a matter of law. Material factual issues remain regarding the extent to which Kelley worked as a seaman, and mixed questions of fact and law remain regarding whether that amount was a sufficiently "substantial part of his work" to qualify Kelley for Jones Act coverage. Accordingly, we conclude that it was error to grant summary judgment.

*By the Court.*—Judgment and order reversed.