Revised February 23, 2000

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-31081

MARK ST. ROMAIN and ANGELA
ST. ROMAIN,

Plaintiffs-Appellants,

versus

INDUSTRIAL FABRICATION AND
REPAIR SERVICE, INC., ET AL.,

Defendants.

SUPERIOR WELL SERVICE, INC.

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

February 22, 2000

Before POLITZ, DAVIS, and STEWART, Circuit Judges.

POLITZ, Circuit Judge:

Mark St. Romain and his wife Angela appeal an adverse summary judgment

in their Jones Act action against Superior Well Service Inc. The district court

concluded that St. Romain was not a seaman for purposes of the Jones Act. For the reasons assigned, we affirm.

## BACKGROUND

This action arises out of an accident which occurred on an offshore platform, owned by Marathon Oil Company and permanently affixed to the Outer Continental Shelf off the coast of Louisiana. St. Romain was employed by Superior as a "plug and abandon" (p&a) helper from 1993 until the date of his accident in 1995. Plug and abandon work involves the decommissioning of oil wells under offshore platforms. Cement plugs are inserted into the wells beneath the ocean floor and the casing pipe is removed. Most of Superior's p&a work is done from fixed platforms. Other projects, including some of St. Romain's assignments, are performed partly from liftboats. A liftboat is a support vessel that uses a crane to pull the casing. The vessel transports Superior's equipment to the platforms, and provides the Superior crew with a place to eat and sleep. The p&a team usually remains at the platform until the job is complete. The work may extend from a few days to several weeks. Occasionally the liftboat also is used to transport Superior's p&a team to the platform.

On March 4, 1995, St. Romain was assisting in the removal of casing when a spreader bar used to lift the pipe failed and a shackle and sling struck his hard hat. St. Romain sought and received benefits under the Longshore and Harbor Workers' Compensation Act.[1] He initially sued the manufacturer of the spreader bar, later

---

[1]33 U.S.C. § 901 *et seq.*

amending his complaint to assert a negligence claim against Superior, claiming status as a seaman under the Jones Act.[2] The district court granted Superior's motion for summary judgment, concluding that St. Romain did not qualify as a Jones Act seaman because he did not establish that he worked aboard an identifiable fleet of vessels. The district court also granted Superior's motion to strike St. Romain's second affidavit and the affidavit of his expert witness because they contained inadmissible legal conclusions and hearsay. The court also denied St. Romain's motion to strike the affidavit of Superior's president, Terence Hall, for lack of personal knowledge, concluding that the affidavit was based on Hall's personal knowledge as president of the company. St. Romain timely appealed.

## ANALYSIS

**Jones Act:**

We review *de novo* a district court's grant of summary judgment.[3] The determination whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact.[4] As such, it is generally inappropriate to dispose of a seaman status claim on summary judgment.[5] Summary judgment is mandated, however, "where the facts and the law will reasonably support only one

---

[2] 46 U.S.C. § 688(a).

[3] **Brown v. Forest Oil Corp.,** 29 F.3d 966 (5th Cir. 1994).

[4] **Harbor Tug and Barge Co. v. Papai,** 520 U.S. 548 (1997); **Bertrand v. Int'l Mooring & Marine, Inc.,** 700 F.2d 240 (5th Cir. 1983).

[5] **Harbor Tug,** 520 U.S. at 554; **Buras v. Commercial Testing & Eng'g Co.,** 736 F.2d 307 (5th Cir. 1984); **Bertrand,** 700 F.2d at 244.

3

conclusion."[6] "Seaman" is not defined in the Jones Act; that task has been left to the courts. The Supreme Court announced a two-part test to determine seaman status:

> First . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission . . . . Second . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.[7]

We previously have defined "fleet" to mean "an identifiable group of vessels acting together or under one control."[8] Our review of the record herein leads to the inexorable conclusion that St. Romain is not a seaman as a matter of law.

It is undisputed that St. Romain was not permanently assigned to any one vessel in navigation. Rather, he contends that he was a member of the crews of the several liftboats used in the p&a jobs performed by Superior, and that these boats constitute an identifiable fleet of vessels.[9] Thus, the issue before the district court, and before this court, is whether St. Romain has produced sufficient evidence to

---

[6]**McDermott Int'l, Inc. v. Wilander,** 498 U.S. 337, 356 (1991) (citing **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 248 (1986).

[7]**Harbor Tug,** 520 U.S. at 554 (quoting **Chandris, Inc. v. Latsis,** 515 U.S. 347, 368 (1995)) (citations and internal quotation marks omitted).

[8]**Barrett v. Chevron, U.S.A., Inc.,** 781 F.2d 1067, 1074 (5th Cir. 1986) (footnote omitted).

[9]We note that no liftboat was being used by Superior on the job when St. Romain's injury occurred. Marathon's platform was affixed to the Outer Continental Shelf at a point where the ocean depth was over 400 feet, which is too deep for a liftboat operation. This fact is not material to our analysis, however, as seaman status must be determined by examining the claimant's overall employment-related connection to a vessel in navigation rather than focusing only on the facts at the time of injury. **Chandris,** 515 U.S. at 363; **Barrett,** 781 F.2d at 1075 (citing **Longmire v. Sea Drilling Corp.,** 610 F.2d 1342 (5th Cir. 1980)).

create a genuine fact issue as to whether he had a substantial connection to a group of vessels acting together under common ownership or control. We must conclude that he has not done so.

The case at bar involves facts strikingly similar to those in **Hufnagel v. Omega Service Industries, Inc.**.[10]  In **Hufnagel,** we denied seaman status to a rigger, employed by an oilfield service company, injured on a fixed offshore platform while repairing the platform's pilings. Hufnagel claimed he was a member of the crew of the liftboat used to assist Omega in its platform repairs and therefore was entitled to seaman status.[11]

We held that Hufnagel did not qualify as a seaman because he could not establish a substantial connection to either a single vessel or to an identifiable fleet of vessels.[12]  Throughout his employment Hufnagel had worked on twenty-six different offshore platforms owned by thirteen different Omega customers.  We concluded that the support vessels which were used on some of Hufnagel's assignments did not qualify as a fleet because "[the vessels] were always different, provided by different customers, and owned and operated by different companies. They were not subject to common ownership or control."[13]

Similarly, St. Romain did not work aboard vessels under common ownership

---

[10]182 F.3d 340 (5th Cir. 1999).

[11]*Id.* at 345.

[12]182 F.3d at 347.

[13]*Id.*

or control. During his employment with Superior, St. Romain had eleven different offshore work assignments. He worked aboard liftboats owned by nine different companies and chartered by five different entities. Superior did not own any of the liftboats. Typically, they were chartered by the oil company that hired Superior to do the p&a work. On four occasions Superior chartered the liftboats for its customer. The deposition testimony and the written charter agreements reflect that the captain of the liftboat, and its owner, had at all times ultimate authority with respect to the navigation, management, and operation of the vessels. Consequently, viewing the facts in the light most favorable to St. Romain, as we are required to do in this summary judgment setting, we must conclude that they do not establish that the liftboats at issue commonly were controlled by any one single entity and, thus, there is no genuine issue herein necessitating a trial.[14] St. Romain is not a seaman.

St. Romain urges us to take an expansive view of "control" of a vessel, relying heavily on our decision in **Bertrand v. Int'l Mooring & Marine Inc.,**[15] wherein we stated, "[i]n light of the purposes of the Jones Act, we will not allow

---

[14]*See e.g.,* **Coats v. Penrod Drilling Corp.,** 5 F.3d 877 (5th Cir. 1993) (denying seaman status to claimant as a matter of law because the vessels claimant worked aboard were not under common ownership or control); **Bach v. Trident Steamship Co., Inc.,** 920 F.2d 322 (5th Cir. 1991) (ships navigated by compulsory pilot not a fleet merely because each vessel was under pilot's control at the time he navigated them); **Langston v. Schlumberger Offshore Serv., Inc.,** 809 F.2d 1192 (5th Cir. 1987) (wireline operator not a seaman where employee was assigned to fifteen different vessels owned by ten owners).

[15]700 F.2d 240 (5th Cir. 1983) (reversing grant of summary judgment denying seaman status to anchorhandlers where vessels employees worked aboard were all used, but not owned or chartered by their employer).

employers to deny Jones Act coverage to seamen by arrangements with third parties regarding the vessel's operation or by the manner in which work is assigned."[16] St. Romain contends that control over a group of vessels should not be determined by who owns or charters the vessels but, instead, should be determined by who supervises the practical operations aboard the vessels. St. Romain maintains that because Superior selected the particular liftboat needed to complete the work, directed the vessel's captain where to position the boat to facilitate the use of its crane, and Superior employees told the captain when to jack-up or down, Superior exercised "operational control" over the boats which should satisfy the common control requirement.

This reliance on **Bertrand** is misplaced. Our later decisions clearly reflect that the court in **Bertrand** was concerned with denying seaman status to anchorhandlers, traditional maritime workers, merely because of the contractual arrangements made by their employer.[17] Our decisions after **Bertrand** have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel or to an identifiable fleet of vessels.[18] We are

---

[16]700 F.2d at 245.

[17]**Buras**, 736 F.2d at 311 ("Our concern [in **Bertrand**] was to prevent the denial of Jones Act seaman status as a matter of law to those claimants who are engaged in traditional maritime activity on a vessel or vessels comprising an identifiable fleet in every respect except common control or ownership.").

[18]736 F.2d at 311 ("[W]e [do not] believe that **Bertrand** rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, **Bertrand** must be read in light of the factual situation it involved.") (footnote omitted); **Bach,** 920 F.2d at 326 ("Dozens (perhaps hundreds) of seaman status cases have come before us, but we have never made an exception to the core requirement that the injured worker show attachment to a vessel or identifiable fleet of vessels.").

not persuaded by the proposed operational control test. To accept that position would involve the court in analyzing the day-to-day minutiae of a liftboat's operations. This we decline to do and, rather, resort to developed workable standards for determining who qualifies as a seaman under the Jones Act. In doing so we must decline to depart from these established principles.

St. Romain places great emphasis on his claim that in all his offshore assignments, whether he worked on the platforms or on the liftboats, he was regularly exposed to the "perils of the sea" faced by traditional seamen. We cannot agree. Whether St. Romain faced perils of the sea is not outcome determinative of seaman status.[19]  We must hold, therefore, that consistent with **Hufnagel,** St. Romain's seaman status claim fails as a matter of law and the district court properly granted summary judgment to Superior.

**Evidentiary Rulings:**

The district court granted Superior's Motion to Strike the affidavit of St. Romain's expert, Kenneth A. Kaigler, and the second affidavit by St. Romain to the extent that they contained inadmissible legal conclusions or hearsay. Additionally, the court denied St. Romain's Motion to Strike or Disregard the affidavit of Terence Hall, Superior's president, for lack of personal knowledge. We review these evidentiary rulings for an abuse of discretion. Where an affidavit is erroneously excluded, a reversal of summary judgment is not warranted if the error was harmless.

---

[19] **Chandris, Inc. v. Latsis,** 515 U.S. 347, 361 (1995) ("Seaman status is not coextensive with seaman's risks."); **Bach,** 920 F.2d at 325 (same).

St. Romain's evidentiary challenges involve the inclusion or exclusion of certain facts related to the proposed operational control test. In light of our rejection of that test, we must conclude that any evidentiary errors, if any errors indeed were committed by the district court, necessarily were harmless.

The decision appealed is AFFIRMED.