Stephen L. **WILLIS** and Corinna J. Willis, Plaintiffs,

v.

**FUGRO CHANCE, INC.,** Defendant.

**Civil Action No. 1:07–CV–353.**

United States District Court, E.D. Texas.

Oct. 11, 2007.

William B. Coffey, Jr. of Coffey & Browne, Bryan Adam Terrell, Beaumont, TX, for Plaintiffs.

James M. Tompkins, Lynne Jurek Shannon, and Ron Thomas Capehart of Galloway Johnson Tompkins Burr & Smith, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

MARCIA CRONE, District Judge.

Pending before the court is Defendant Fugro Chance, Inc.'s ("Fugro Chance") Motion for Summary Judgment (# 14). Fugro Chance seeks summary judgment on Plaintiffs Stephen L. Willis ("Willis") and Corinna J. Willis's ("Mrs. Willis") (collectively, "Plaintiffs") claims for negligence pursuant to the Merchant Marine Act of 1920, as amended, 46 U.S.C. §§ 30104–30105 (formerly 46 App. U.S.C. § 688) (the "Jones Act"). Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

### I. *Background*

Fugro Chance, a Louisiana corporation, provides a range of survey services to the energy industry, including positioning offshore drilling rigs, production platforms, and pipeline lay barges. In order to render these services, Fugro Chance maintains a Gulf of Mexico database containing information concerning the positions of wells, pipelines, and hazards in the Gulf of Mexico as well as the locations of shipwrecks, block boundary polygons, shipping fairways, and underwater hazards on the Outer Continental Shelf. Fugro Chance employees utilize this database to assist clients in planning projects and to provide information to field crews in order to avoid delays and assure safe operations.

Willis was employed by Fugro Chance as a survey party chief from December 1994 to August 2002 and from November 2004 to June 2007. In this role, Willis assisted in moving vessels and other devices, such as semi-submersible drilling rigs, jack-up drilling rigs, submersible drilling rigs, pipe laying barges, derrick barges, and coring vessels, from dry-docks, harbors, and similar places to drill site locations. Equipped with a global star satellite telephone and other electronic equipment, Willis was responsible for consulting global positioning satellites, maps, and Fugro Chance's database and notifying the rig mover of potential underwater obstructions and hazards. Relying on information from Willis as well as his own observations of the monitors, the rig mover would then order tug boat captains to make the proper navigational adjustments.

Plaintiffs allege that, on January 12, 2007, Willis was exposed to mercury and other toxic chemicals while aboard the LESTER PETTUS, a submersible offshore drilling rig leased by operator Century Exploration New Orleans, Inc. ("Century Exploration") but owned and "crewed" by Noble Drilling Services, Inc. ("Noble Drilling"). At the time of the incident, Fugro Chance had been retained by Century Exploration to provide navigational information to the rig mover of the LESTER PETTUS, a Noble Drilling employee, in order to assist him in moving the rig from a shipyard in Pascagoula, Mississippi, to an offshore location. This information was to be provided by Willis and his two Fugro Chance assistants while aboard the LESTER PETTUS.

When Willis arrived at the rig on the night in question, he reported to the toolpusher and was told where to set up his equipment. Willis asserts that, prior to departure from the shipyard, the ballast operator informed him that the rig was not ready to leave. Despite this purported statement, the rig proceeded to depart. While en route, valves in the area where Willis was working malfunctioned, and Willis and his equipment were allegedly showered with mercury and other toxic chemicals. According to Plaintiffs, as a result of this exposure, Willis sustained severe bodily injury, including damage to his brain and central nervous system.

On May 3, 2007, Willis and his wife, both Texas residents, filed suit against Fugro Chance in the 356th Judicial District of Hardin County, Texas, asserting claims of negligence pursuant to the Jones Act.[1] As a result of his injuries, Willis purports to have suffered physical pain, mental anguish, and loss of earning capacity; incurred reasonable and necessary medical expenses; and sustained physical impairment, disfigurement, and loss of household services. Mrs. Willis additionally claims loss of consortium and interference with marital and family relations. Consequently, Plaintiffs seek compensatory damages under the Jones Act.

On June 8, 2007, Fugro Chance removed this case to federal court pursuant to 28 U.S.C. § 1446 on the basis of diversity of citizenship under 28 U.S.C. § 1332 as well as the court's admiralty jurisdiction pursuant to Federal Rule of Civil Procedure 9(h). Plaintiffs filed a motion for remand on July 3, 2007, arguing that Fugro Chance is barred from removing a Jones Act case. On September 4, 2007, Fugro Chance filed the instant motion for summary judgment. In its motion, Fugro Chance contends that because Willis is not a seaman, Plaintiffs cannot seek seaman's remedies pursuant to the Jones Act. Specifically, Fugro Chance argues that Willis does not have seaman status because he was not connected to a vessel or identifiable fleet of vessels.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The party seeking sum-

---

1. The parties have stipulated that all causes of action pending before the court are alleged under the Jones Act. The court will, therefore, disregard any additional causes of action arguably alleged in the complaint, including claims of unseaworthiness and maintenance and cure brought pursuant to general admiralty law.

mary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006); *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322 n. 3, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.,* 438 F.3d 519, 523 (5th Cir.2006); *Smith ex rel. Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir.2003); *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau,* 420 F.3d 378, 382 (5th Cir.2005). All the evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Lincoln Gen. Ins. Co.,* 401 F.3d at 350; *Smith,* 391 F.3d at 624; *Malacara,* 353 F.3d at 398; *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir.2003); *Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor. *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Shields v. Twiss,* 389 F.3d 142, 150 (5th Cir.2004); *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir.2003); *Martinez,* 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.), *cert. denied,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 372 (5th Cir.2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *EMCASCO Ins. Co.,* 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.,* 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir.2004). "In such a situation, there can be 'no genuine issue as to any material

fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## B. *Seaman Status Under the Jones Act*

■ Plaintiffs claim that Willis was injured while aboard the LESTER PETTUS due to the negligence of his employer, Fugro Chance. The Jones Act, 46 U.S.C. §§ 30104–30105 (formerly 46 App. U.S.C. § 688), permits "a seaman injured in the course of employment" to sue his employer for negligence. 46 U.S.C. § 30104(a). In order to maintain a cause of action under the Jones Act, the claimant must be a seaman. *Id.; Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 560, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997); *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir.1999). The Jones Act, however, does not define "seaman." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *Roberts v. Cardinal Serv., Inc.*, 266 F.3d 368, 374 (5th Cir.2001), *cert. denied*, 535 U.S. 954, 122 S.Ct. 1357, 152 L.Ed.2d 353 (2002); *St. Romain v. Industrial Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir.), *cert. denied*, 531 U.S. 816, 121 S.Ct. 53, 148 L.Ed.2d 21 (2000). Instead, the task of determining which maritime workers are entitled to Jones Act protection is left to the courts. *Chandris*, 515 U.S. at 355, 115 S.Ct. 2172; *Roberts*, 266 F.3d at 374; *St. Romain*, 203 F.3d at 378. In 1995, the Supreme Court announced a two-part test for determining seaman status:

> First, ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.... Second, ... a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

*Chandris*, 515 U.S. at 368, 115 S.Ct. 2172 (citations and internal quotation marks omitted); *accord Harbor Tug & Barge Co.*, 520 U.S. at 554, 117 S.Ct. 1535; *Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir.2006); *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387 (5th Cir.2003); *Roberts*, 266 F.3d at 374; *St. Romain*, 203 F.3d at 378–79; *Hufnagel*, 182 F.3d at 346.

■ Fugro Chance does not dispute that Willis's duties aboard the rigs to which he was assigned, including the LESTER PETTUS, contributed to the function of these vessels and the accomplishment of their missions. Likewise, Fugro Chance does not disagree that the rigs were vessels in navigation. Consequently, Willis's status as a seaman turns on whether he has "a connection to a vessel ... (or an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172.

■ In *Chandris*, the Supreme Court held that the substantiality requirement demands that a seaman's connection to a vessel be substantial in terms of both duration (temporal prong) and nature (functional prong). *Id.* at 371, 115 S.Ct. 2172. The fundamental purpose of this requirement is to distinguish land-based maritime employees who have "only a transitory or sporadic connection to a vessel in navigation" from sea-based workers whose employment "regularly expose[s] them to the perils of the sea." *Id.* at 368, 115 S.Ct. 2172; *accord Harbor Tug & Barge Co.*, 520 U.S. at 555, 117 S.Ct. 1535; *Becker*, 335 F.3d at 388; *Roberts*, 266 F.3d at 374; *Hufnagel*, 182 F.3d at 346. Although the nature of an employee's activities is relevant to making this distinction, "it is not the employee's particular job that is deter-

minative, but the employee's connection to a vessel." *Chandris,* 515 U.S. at 364, 115 S.Ct. 2172 (internal quotations and citations omitted); *accord Becker,* 335 F.3d at 388. As noted by the Supreme Court, "the Jones Act was intended to protect sea-based maritime workers who owe their allegiance to a vessel, and not land-based employees, who do not." *Chandris,* 515 U.S. at 376, 115 S.Ct. 2172.

▮ The *Chandris* court adopted the position taken by the Fifth Circuit that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371, 115 S.Ct. 2172; *accord Becker,* 335 F.3d at 389; *Roberts,* 266 F.3d at 375. This 30-percent test applies whether a single vessel or an "identifiable group" of vessels is at issue. *Roberts,* 266 F.3d at 377. If more than a single vessel is involved, however, the vessels must be a finite group under common ownership or control. *Id.* at 375–76; *see also Harbor Tug & Barge Co.,* 520 U.S. at 556–57, 117 S.Ct. 1535; *Chandris,* 515 U.S. at 366, 115 S.Ct. 2172; *St. Romain,* 203 F.3d at 379; *Hufnagel,* 182 F.3d at 347–48.

Willis argues that the Fifth Circuit has created a broad exception to the common ownership or control requirement. *See Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240 (5th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). He claims that this exception was affirmed in *Roberts. See* 266 F.3d at 377–78. Specifically, Willis contends that if a maritime employee is a traditional seaman regularly exposed to the perils of the sea, he automatically qualifies for seaman status, irrespective of whether he has a substantial connection to a finite group of vessels under common ownership or control. After reviewing the relevant case law, the court disagrees with

Willis's interpretation of *Bertrand* and finds that the limited, fact-specific exception created in that opinion is inapposite to the facts presented here.

In *Bertrand,* the Fifth Circuit held that a seaman is not necessarily barred from bringing a Jones Act claim simply because the "employer neither owns nor controls the several vessels upon which the seaman works." 700 F.2d at 245. The plaintiffs in *Bertrand* were members of an International Mooring and Marine, Inc. ("IMM"), anchorhandling crew who were injured while returning from relocating a Tenneco drilling rig. *Id.* at 242–43. For this particular job, the crew worked on a vessel that Tenneco chartered, specially-equipped, and then loaned to IMM. *Id.* at 242. On other jobs, however, IMM chartered the vessels used by its crew. *Id.* at 245. The court found that the fact that IMM did not own or control all of the vessels used by its anchorhandling crew did not preclude a finding of seaman status because "whether the different vessels were under common ownership or control was determined by the employer, not the nature of the claimants' work." *Id.* Rather, the court held, "[i]n light of the purposes of the Jones Act, we will not allow employers to deny Jones Act coverage to seaman by arrangements with third parties regarding the vessel's operation or the manner in which work is assigned." *Id.*

Soon after the *Bertrand* opinion was issued, the Fifth Circuit limited the exception stated therein to the particular facts of the case. *See Buras v. Commercial Testing & Eng'g Co.,* 736 F.2d 307, 311 (5th Cir.1984); *see also St. Romain,* 203 F.3d at 380. In *Buras,* the court held:

> [W]e do not believe that [*Bertrand*] can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled ves-

sels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that *Bertrand* rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, *Bertrand* must be read in light of the factual situation it involved.

736 F.2d at 311; *accord St. Romain,* 203 F.3d at 380 n. 18. In 2001, the Fifth Circuit briefly revisited the *Bertrand* opinion in light of a Louisiana Court of Appeals case, which expanded the *Bertrand* exception to all claimants who were classical seaman necessarily exposed to marine perils. *See Roberts,* 266 F.3d at 377–78 (citing *Little v. Amoco Prod. Co.,* 734 So.2d 933 (La.Ct. App.1999)). As in earlier opinions, however, the Fifth Circuit ultimately held that it saw "no reason to depart from our well-established rule" in favor of the "possible" exception created by Louisiana state courts. *Id.* at 378. Accordingly, unless the instant case is factually analogous to *Bertrand,* Willis must establish a substantial connection to a fleet of vessels under common ownership or control in order to maintain a Jones Act claim.

■ Looking to the record, the case at bar is factually distinguishable from *Bertrand.* In *Bertrand,* IMM chose whether to borrow, charter, or own the vessels utilized by its anchorhandlers. *See* 700 F.2d at 245. Consequently, the identity of the owner or controller of these vessels was determined by IMM. *Id.* Conversely, in this instance, it is Fugro Chance's customers and the scope of their operations that determine who owns or controls the vessels to which a Fugro Chance employee is assigned. Fugro Chance has little discretion as to the particular vessels to which its employees are dispatched. Rather, Fugro Chance surveyors board and provide navigational information to any vessel designated by a customer as requir-

ing rig relocation assistance. The nature of this business dictates that the rigs, and the tugboats that pull them, be owned and controlled by entities other than Fugro Chance. The court, therefore, finds that the *Bertrand* court's concern for devious employment practices is inapplicable in this situation and holds that Willis does not fit within the purview of the narrow *Bertrand* exception.

■ Additionally, the court finds that there is no genuine issue of material fact as to whether the LESTER PETTUS was part of an identifiable fleet under Fugro Chance's common control or ownership. Willis admitted in his sworn deposition testimony that the vessels to which he was assigned were not owned, operated, or chartered by Fugro Chance. Plaintiffs contend, however, that because Willis contributed to navigation and had the authority to "shut down" a rig, Fugro Chance exercised operational control over these vessels, which should satisfy the common control requirement. Although this expansive interpretation of "control" might initially appear reasonable, the Fifth Circuit has explicitly declined to adopt the operational control definition of an identifiable fleet of vessels. *See St. Romain,* 203 F.3d at 380; *Buras,* 736 F.2d at 311. In doing so, the court declared that analyzing the "day-to-day minutiae" of a vessel's operations to determine who qualifies as a seaman is inappropriate in light of "developed workable standards." *St. Romain,* 203 F.3d at 380.

Therefore, this court rejects Plaintiffs' contention that Fugro Chance exercised control over the LESTER PETTUS or any other vessel to which Willis provided services. Rather, the court finds that Plaintiffs have failed to show that Willis had a substantial connection to a vessel or identifiable group of vessels, as required by *Chandris. See* 515 U.S. at 368, 115

S.Ct. 2172; *see also St. Romain*, 203 F.3d at 378–79; *Hufnagel*, 182 F.3d at 346. Thus, as a matter of law, Willis was not a seaman while employed by Fugro Chance, and Plaintiffs have no viable Jones Act claim. *See Harbor Tug & Barge Co.*, 520 U.S. at 560, 117 S.Ct. 1535; *Hufnagel*, 182 F.3d at 346.

### III. *Conclusion*

Accordingly, Fugro Chance's Motion for Summary Judgment is GRANTED. Plaintiffs fail to present a claim that warrants relief. There remain no material facts in dispute, and Fugro Chance is entitled to judgment as a matter of law.