IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-41104
Summary Calendar

STEPHEN L WILLIS; CORINNA J WILLIS

Plaintiffs-Appellants

v.

FUGRO CHANCE, INC

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:07-CV-353

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Stephen and Corinna Willis (the "Willises") appeal the district court's grant of Fugro Chance, Inc.'s ("Fugro Chance") motion for summary judgment. We AFFIRM.

The district court correctly outlined the facts underlying the Willises' claims:

---

[*] Pursuant to 5TH CIR. R. 47.5, this court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Fugro Chance, a Louisiana corporation, provides a range of services to the energy industry, including positioning offshore drilling rigs, production platforms, and pipeline lay barges. In order to render these services, Fugro Chance maintains a Gulf of Mexico database containing information concerning the positions of wells, pipelines, and hazards in the Gulf of Mexico as well as the locations of shipwrecks, block boundary polygons, shipping fairways, and underwater hazards on the Outer Continental Shelf. Fugro Chance employees utilize this database to assist clients in planning projects and to provide information to field crews in order to avoid delays and assure safe operations.

[Stephen] Willis was employed by Fugro Chance as a survey party chief from December 1994 to August 2002 and from November 2004 to June 2007. In this role, Willis assisted in moving vessels and other devices, such as semi-submersible drilling rigs, jack-up drilling rigs, submersible drilling rigs, pipe laying barges, derrick barges, and coring vessels, from dry-docks, harbors, and similar places to drill site locations. Equipped with a global star satellite telephone and other electronic equipment, Willis was responsible for consulting global positioning satellites, maps, and Fugro Chance's database and notifying the rig mover of potential underwater obstructions and hazards. Relying on information from Willis as well as his own observations of the monitors, the rig mover would then order tug boat captains to make the proper navigational adjustments.

Plaintiffs allege that, on January 12, 2007, Willis was exposed to mercury and other toxic chemicals while aboard the LESTER PETTUS, a submersible offshore drilling rig leased by operator Century Exploration New Orleans, Inc. ("Century Exploration") but owned and "crewed" by Noble Drilling Services, Inc. ("Noble Drilling"). At the time of the incident, Fugro Chance had been retained by Century Exploration to provide navigational information to the rig mover of the LESTER PETTUS, a Noble Drilling employee, in order to assist him in moving the rig from a shipyard in Pascagoula, Mississippi, to an offshore location. This information was to be provided by Willis and his two Fugro Chance assistants while aboard the LESTER PETTUS.

When Willis arrived at the rig on the night in question, he reported to the toolpusher and was told where to set up his equipment. Willis asserts that, prior to departure from the shipyard, the ballast operator informed him that the rig was not ready to leave. Despite this purported statement, the rig proceeded

to depart. While en route, valves in the area where Willis was working malfunctioned, and Willis and his equipment were allegedly showered with mercury and other toxic chemicals. According to [the Willises], as a result of this exposure, Willis sustained severe bodily injury, including damage to his brain and central nervous system.

Willis v. Fugro Chance, Inc., No. 1:07-CV-353, slip op. at 1–3 (E.D. Tex. Oct. 11, 2007).

In May 2007, the Willises sued Fugro Chance in Texas state court, alleging negligence under the Merchant Marine Act of 1920, 46 U.S.C. §§ 30104-30105, commonly known as the "Jones Act". Fugro Chance removed the case to federal court on the basis of diversity jurisdiction as well as the court's original admiralty jurisdiction. The Willises moved to remand, arguing that Fugro Chance was barred from removing a Jones Act case. Fugro Chance then moved for summary judgment, contending that Willis did not qualify as a "seaman" for purposes of the Jones Act as defined by the Supreme Court in Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). The district court agreed, denied the Willises' motion to remand, and granted summary judgment in favor of Fugro Chance.[1] The Willises now appeal, arguing that the district court erred in failing to

---

[1] "As a general rule, we agree that Jones Act cases are not removable." Burchett v. Cargill, Inc., 48 F.3d 173, 175 (5th Cir. 1995) (citing Johnson v. ODECO Oil & Gas Co., 864 F.2d 40, 42 (5th Cir. 1989)). Upon a motion to remand, "in the absence of any issue of a fraudulent attempt to evade removal, the court determining whether a cause of action under the Jones Act has been alleged is limited to a review of the plaintiff's pleadings." Preston v. Grant Advertising, Inc., 375 F.2d 439, 440 (5th Cir. 1967) (per curiam). In its notice of removal and opposition to the Willises' motion to remand, Fugro Chance alleged that the Willises fraudulently pleaded a Jones Act claim to defeat federal jurisdiction. "Thus, while federal courts ordinarily look only to the plaintiffs' pleadings in determining whether a Jones Act claim has been stated, defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." Lackey v. Atl. Richfield Co., 990 F.2d 202, 207 (5th Cir. 1993). Here, the district court was within its bounds to consider summary judgment-type evidence and to deny remand if it "'determine[s] that as a matter of law there was no reasonable basis for predicting that the plaintiff might establish liability.'" Burchett, 48 F.3d at 176 (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 551 (5th Cir. 1981)). "The fact that Jones Act claims are ordinarily not removable does not prevent this inquiry." Lackey, 990 F.2d at 207.

identify Willis as a seaman, both under Chandris and in light of this Court's definition of "seaman" in Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240, 245 (5th Cir. 1983).

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as matter of law. FED. R. CIV. P. 56(c). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005). To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The Jones Act permits "a seaman injured in the course of employment" to recover from his employer for negligence. 46 U.S.C. § 30104(a). Although the statute does not define the term "seaman", the Supreme Court has defined the term and provided courts a two-part test for determining a claimant's status as a seaman:

> First, . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: All who work at sea in the service of a ship are eligible for seaman status.
>
> Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and

therefore whose employment does not regularly expose them to the perils of the sea.

Chandris, 515 U.S. at 368 (internal quotations and citations omitted). The parties do not dispute the first prong of the test for seaman status; rather, the resolution here depends on whether Willis can demonstrate a substantial connection to a vessel or group of vessels.

The Chandris Court recognized that "'[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it.'" Id. at 371 (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)). Courts must assess the substance of the connection to a vessel or group of vessels using both temporal and functional measures, but the Supreme Court provided guidance by adopting this Court's general rule of thumb to measure the temporal connection: "A worker who spends less than about 30 percent of this time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Id. As this Court further clarified:

> Indeed, application of the 30 percent test is the very means by which a substantial temporal connection is determined, regardless whether a single vessel or a group of vessels is at issue. And, when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control.

Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 376–77 (5th Cir. 2001) (emphasis added).

Willis argues that the district court ignored the fact that he spends the majority of his time working at sea, a fact he claims should entitle him to classification as a seaman for the reasons set forth in Chandris. He also contends that the district court erred when it declined to recognize his status as a seaman specifically because the vessel upon which he was working at the time

of his injury was not part of an identifiable fleet under his employer's common control or ownership. Willis argues that the court's decision is not supported by this Court's holding in Bertrand that allowed an injured worker to assert a Jones Act claim, even though the "employer neither own[ed] nor control[led] the several vessels upon which the seaman work[ed]." 700 F.2d at 245.

But even if the record supports Willis's contention that he the type of maritime worker that Congress intended to protect under the Jones Act because his employment "regularly expose[s] [him] to the perils of the sea," Chandris, 515 U.S. at 368, Willis ignores the fact that we have limited our holding in Bertrand to the facts of that case:

> Although Bertrand thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that Bertrand rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, Bertrand must be read in light of the factual situation it involved.

Buras v. Commercial Testing & Eng'g Co., 736 F.2d 307, 311 (5th Cir. 1984) (footnote omitted). Further, in Roberts, we considered one court's "classifi[cation] [of a claimant] as a seaman, despite the fact that he did not have a substantial connection to a fleet under common ownership or control, because [the claimant] 'faced regular exposure to the perils of the sea.'" 266 F.3d at 377 (considering the Louisiana Supreme Court's holding in Wisner v. Professional Divers of New Orleans, 731 So. 2d 200, 202 (La. 1999)). Nevertheless, we rejected that opportunity "to depart from our well-established rule . . . that a worker who fails to show that at least 30 percent of his time is spent on vessels under the common ownership or control of his employer is precluded from recovering as a seaman under the Jones Act." Id. at 378; see also St. Romain v.

Indus. Fabrication & Repair Svc., Inc., 203 F.3d 376, 379–80 (5th Cir. 2000) (stating that because the worker "did not work aboard vessels under common ownership or control," then he "[wa]s not a seaman").

Here, the record reveals that Willis's employer, Fugro Chance, neither owned nor exercised control over any of the vessels upon which Willis worked, including the LESTER PETTUS. Willis does not qualify as a seaman; thus he is prohibited from recovery under the Jones Act.

Therefore, the judgment of the district court is AFFIRMED.